The PEOPLE of the State of
Colorado, Complainant,

v.

Mark P. FIELD, Attorney–Respondent.

No. 97SA108.

Supreme Court of Colorado,
En Banc.

Sept. 15, 1997.

Linda Donnelly, Disciplinary Counsel, James S. Sudler, Assistant Disciplinary Counsel, Denver, for Complainant.

The Law Offices of Bennett S. Aisenberg, P.C., Bennett S. Aisenberg, H. Paul Himes, Jr., Denver, for Attorney–Respondent.

PER CURIAM.

In this lawyer discipline case, a hearing panel of the supreme court grievance committee approved the findings and the recommendation of a hearing board that the respondent be suspended from the practice of law for six months and be required to petition for reinstatement. The respondent has excepted to the findings and to the recommended discipline as too severe. After considering the hearing board's report and examining the record, we have decided to accept the recommendations of the board and the panel.

## I.

The respondent was admitted to practice law in this state in 1980. Prior to the hearing in this case, the complainant filed a motion for judgment on the pleadings. The motion was granted because the respondent's admissions left no genuine issues of material fact in dispute. The hearing board listened to the testimony of the complainant's witnesses and to that of the respondent himself, as well as considering an exhibit admitted by stipulation. Following the hearing, the board found the following by clear and convincing evidence.

On April 14, 1994, a prospective client met with the respondent to discuss having the client's criminal records sealed pursuant to section 24–72–308, 10B C.R.S. (1988 & 1994 Supp.). The respondent agreed to take the case for a flat fee of $250, although it was not paid at that time. The respondent obtained the client's criminal history and contacted the district attorney's office, at which time he learned that that office would not oppose the sealing of the client's records. When the client called in April 1994, the respondent reminded him that the fee needed to be paid. On May 6, 1994, the client paid the respondent $250 in cash and obtained a receipt signed by the respondent's secretary.

The client's wife called the respondent in June 1994 to inquire about the status of her husband's case. Although he had taken no further action on the matter and had not filed anything, the respondent told her that he had filed a motion to seal the records and

that he was waiting to hear from the court. The respondent also told his client's wife that cases like her husband's have a low priority and that resolution of the case would be delayed.

Between September 1994 and March 1995, the client and his wife called the respondent's office on numerous occasions and left messages for the respondent, but their calls were not returned. In the spring of 1995, they went to the respondent's office and found that he had moved. They had not been provided with information regarding the respondent's new address or telephone number. When they did learn his telephone number, they tried without success to reach him at his office.

The client was finally able to speak with the respondent in January 1996. The respondent told him, falsely, that a court date was scheduled for February 26, 1996, at 9:00 a.m. The respondent and his client agreed to meet at the courtroom at that date and time. The respondent also told his client that if the court signed the order to seal the records that day the matter would be concluded. In fact, no such hearing was set because the respondent had not filed any pleadings whatsoever on behalf of his client.

The client and his wife appeared in court on the appointed date, but the respondent did not. They discovered that the client's case was not on the docket because the respondent had filed no such action. The client's wife testified that she then tried to call the respondent but was told he was unavailable. When she again telephoned the respondent's office and identified herself as a new client, she was able to speak with the respondent personally.

The client and his wife filed a request for investigation against the respondent. After the request was filed, the respondent claimed that the client had not paid him. When confronted with the receipt for the $250, however, the respondent refunded that amount plus interest. The former client's criminal records have not been sealed because he has not had the funds to hire another lawyer to file a motion to seal the records.

 The respondent's failure to take any action on behalf of his client over an almost two-year period violated Colo. RPC 1.3 (neglecting a legal matter), and Colo. RPC 1.4(a) (failing to communicate appropriately with a client). In addition, the respondent's blatant misrepresentations to his client and the client's wife that a motion to seal had been filed, that he was waiting to hear from the court, and that a court date had been scheduled, all violated Colo. RPC 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit or misrepresentation).

## II.

The hearing panel approved the board's recommendation that the respondent be suspended for six months and be required to petition for reinstatement pursuant to C.R.C.P. 241.22(b)-(d). The respondent excepted to the recommended discipline as too severe.

The ABA *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) (ABA *Standards*), provides that, in the absence of aggravating or mitigating factors, suspension is an appropriate sanction when "(a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or (b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client." ABA *Standards* 4.42. With respect to telling his client that the proceeding had been filed and that a hearing had been set, "[s]uspension is generally appropriate when a lawyer knowingly deceives a client, and causes injury or potential injury to the client." *Id.* at 4.62.

The hearing board identified the following aggravating factors. The respondent has a history of discipline. *See id.* at 9.22(a). He received a letter of admonition in 1987 for making an assertion in a civil complaint which he should have known was untrue and another admonition in June 1996 for failing to advise the court of information he possessed concerning his client's whereabouts. In addition, the respondent received a private censure in October 1984 (which in fact stayed a suspension for one year and one day) because between the time of his application to the Colorado bar and his admission,

he entered into a criminal conspiracy to defraud an insurance company and received a deferred judgment. He did not report this to the board of law examiners, nor did he report the money gained in the course of the conspiracy as taxable income. Additional aggravating factors include the presence of a dishonest motive, *see id.* at 9.22(b); a bad faith obstruction of the disciplinary proceeding by not being forthcoming with the Investigative Counsel of the Office of Disciplinary Counsel, *see id.* at 9.22(e); the respondent's client's and his wife's vulnerability because of their financial status, *see id.* at 9.22(h); the respondent's substantial experience in the practice of law, *see id.* at 9.22(i); and the respondent's indifference to making restitution as he waited until after the request for investigation was filed, *see id.* at 9.22(j).

In his exceptions, the respondent claims that the hearing board made certain erroneous findings. The hearing board noted that the respondent had attempted to explain his conduct "by professing ignorance as to the reason the [client and his wife] were not advised of his new office address, and by asserting that he had confused the [client] matter with another case when he advised him of the court date." The board found that these explanations were not credible, however:

> First, we note that, until he was presented with a receipt for payment by [the client], the respondent claimed he did not complete any work for [the client] because he had not received payment. When presented with the receipt, the respondent claimed that he had previously been unable to locate the receipt because of an error within his office.

According to the respondent, there was no evidence to suggest that the respondent claimed he did not complete any work for the client because he had not received payment. We disagree. In his response to the request for investigation, quoted by the disciplinary counsel during the respondent's cross-examination at the hearing, the respondent stated:

> At the time [the client] left a copy of his criminal history, and I informed him that he would need to pay a retainer of at least

$50 for me to begin work on the action. My records do not show that I ever received a retainer. I had never seen a copy of any receipt until the filing of [the client's] complaint.

In addition, in an interview with an investigator for the Office of Disciplinary Counsel on May 16, 1996, the respondent stated:

I told [the client] I could do the case hourly at $150.00 per hour and that I needed a minimum retainer of $250.00. He was going to try and raise the retainer. We were going to try to get the filing fee waived. I don't think I met his wife. I talked with the D.A.'s office regarding procedure and they said it would probably be no contest.

Complainant's [sic] say they brought in the money, I didn't know that. My records show I never got the money. I had calls from him and I was telling him to get the money in. I had messages from him on April 25 and April 26.

I never saw the receipt before this complaint. I had a part-time secretary. I have no idea where the money went. I have looked at the trust account records and there is no $250.00 in either account, even cash.

I never filed anything. If I told him about a court appearance, I must have had him confused with another person, maybe a debtor on a collection case.

■■■ Our standard of review of factual matters in lawyer discipline cases is well-settled. "When approved by the hearing panel, the board's factual findings are binding on this court unless, after considering the record as a whole, the findings are unsupported by substantial evidence." *People v. Bennett,* 810 P.2d 661, 665 (Colo.1991). "When, as here, it acts as fact-finder, the hearing board has the duty to assess the credibility of the evidence before it, controverted and uncontroverted." *People v. Robnett,* 859 P.2d 872, 877 (Colo.1993). "In determining whether the board's findings are supported by substantial evidence, it is not within the province of this court to measure the weight of the evidence or to resolve the credibility of witnesses." *People v. Distel,* 759 P.2d 654, 662 (Colo.1988). The hearing

board's interpretation of the respondent's response to the request for investigation and comments to the Office of Disciplinary Counsel's investigator finds support in the record and is not clearly erroneous.

Further, the hearing board found that the respondent's explanations of why his misrepresentations were merely negligent were also not credible because the client's wife testified that she succeeded in speaking personally with the respondent only when she misidentified herself as a new client. Finally, the board noted from the respondent's disciplinary history that each prior offense concerned an allegation of a lack of candor on the respondent's part. This reinforces our conclusion that the hearing board correctly found the respondent's explanations not credible.

Next, the respondent asserts that the hearing board's finding that the client was harmed was clearly erroneous. The basis of this claim is that, after two years of inaction, the respondent did not refund the $250 plus interest until a request for investigation was filed against him. According to the respondent, his client "had the same funds to hire other counsel to petition the Court to seal his criminal arrest record, and had in no way been harmed in the interim in his job search or in any other way." The inexcusable delay by itself is clear evidence that the client and his wife were harmed by the respondent's inaction. They were forced to waste significant amounts of time just trying to contact the respondent, with the result that they attended a nonexistent court hearing because of the respondent's lies. We find it significant for disciplinary purposes that the respondent still pretends to see no harm in his conduct.

■■■ Further, the hearing board's finding of no mitigating factors was not clearly erroneous. The hearing board found that the fact the respondent finally refunded his fee only after the filing of the request for investigation was actually an aggravating factor under ABA *Standards* 9.22(j). At best, even under different circumstances, it would be neither mitigating nor aggravating. *See* ABA *Standards* 9.4(a); *People v. Pittam,* 889

P.2d 678, 680 (Colo.1995) (reimbursement of client retainer following the filing of the request for investigation is not a mitigating factor). Second, "interim rehabilitation," assuming its presence purely for the sake of argument, was deleted as a mitigating factor under ABA *Standards* 9.32 in 1992. *See People v. Brady*, 923 P.2d 887, 889 (Colo. 1996).

■ Third, the respondent's position that he has made full and free disclosure to the hearing board or that he had a cooperative attitude toward the proceedings is undercut by the hearing board's specific finding that he was not forthcoming with the investigative counsel and therefore engaged in a bad faith obstruction of the disciplinary proceeding, an *aggravating* factor under ABA *Standards* 9.22(e). Moreover, the respondent's previous disciplinary offenses are not so remote in time as to be a mitigating factor, especially in light of their similarity to the present case involving, as they do, dishonesty to a greater or lesser extent.

■ Finally, the respondent alleges that in previous cases we have found a public censure to be an adequate sanction and have not suspended the lawyer. The cases the respondent relies on are distinguishable, however. For example, the lawyer in *People v. Smith*, 769 P.2d 1078 (Colo.1989), failed to file an action for damages on behalf of his clients while misrepresenting to them that suit had been commenced. *See id.* at 1079. We noted that ordinarily a suspension would be appropriate, but given the presence of certain mitigating factors, including the absence of prior discipline and full and free disclosure to the grievance committee, we concluded that public censure would be adequate. *See id.* at 1080. The lawyer in *People v. Woodrum*, 911 P.2d 640, 641 (Colo. 1996), was publicly censured for neglecting a legal matter, misrepresenting to her client that a favorable plea bargain had been offered, and commingling client funds with her personal funds. However, Woodrum had no record of prior discipline, cooperated in the disciplinary proceedings, and was inexperienced in the practice of law at the time of the misconduct. *See id.*

The lawyer in *People v. Doherty*, 908 P.2d 1120 (Colo.1996), who was publicly censured, neglected a legal matter and made misrepresentations that a dissolution of marriage decree existed when none did. In finding a public censure appropriate, notwithstanding the lawyer's previous letter of admonition, we noted that "the complainant states that the respondent's 'representation to his client regarding the status of her dissolution was negligent rather than an intentional effort to deceive her.'" *Id.* at 1121.

We also publicly censured the attorney in *People v. Eagan*, 902 P.2d 841 (Colo.1995), for neglecting an estate matter, and for repeatedly misrepresenting to the personal representative that he would complete the necessary documents in a timely manner. The gravamen of the misconduct in *Eagan* was the neglect. *See id.* at 841–42. The misrepresentations in this case are more aggravated, especially in light of the respondent's more serious prior discipline than in the *Eagan* case.

The more recent cases cited by the respondent can also be distinguished because, while they do involve neglect and prior discipline, they do not involve lawyers engaging in dishonesty and misrepresentation. The misconduct in *People v. Barbieri*, 935 P.2d 12, 13 (Colo.1997), involved neglect and not misrepresentation. In addition, Barbieri's four letters of admonition were for conduct occurring at the same time as in the reported case and were therefore considered a pattern of misconduct rather than previous discipline. *See id.* at 13. We said, "[w]hile the seriousness of the misconduct in this case in conjunction with the respondent's pattern of neglecting other legal matters would ordinarily warrant a more severe sanction, the mitigating factors together with the special conditions that the respondent has agreed to satisfy persuade us that a public censure is adequate and appropriate." *Id.* No such mitigating factors are present in this case. *See also People v. Buckingham*, 938 P.2d 1157, 1159 (Colo.1997) (lawyer publicly censured for neglect and engaging in conflict of interest); *People v. Williams*, 936 P.2d 1289, 1290 (Colo.1997) (lawyer publicly censured for neglecting legal matter); *Peo-*

*ple v. Mohar,* 935 P.2d 19, 19 (Colo.1997) (lawyer publicly censured for neglecting, not misrepresenting, case).

The seriousness of the misconduct in this case, together with the aggravating factors, the absence of any factors in mitigation, as well as the respondent's apparent inability to appreciate its seriousness, convince us that a period of suspension, with the requirement of reinstatement proceedings, is both necessary and appropriate. Accordingly, we accept the hearing board's and panel's recommendations.

## III.

It is hereby ordered that Mark P. Field be suspended from the practice of law for six months, effective thirty days after the issuance of this opinion. In order to be reinstated, the respondent must petition for reinstatement and undergo reinstatement proceedings pursuant to C.R.C.P. 241.22(b)-(d). It is also ordered that the respondent pay the costs of this proceeding in the amount of $145.74 within thirty days from the announcement of this opinion to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 920–S, Denver, Colorado 80202.