The PEOPLE of the State of
Colorado, Complainant,

v.

Mark P. FIELD, Attorney–Respondent.

No. 97SA352.

Supreme Court of Colorado,
En Banc.

Nov. 2, 1998.

Linda Donnelly, Disciplinary Counsel, James S. Sudler, Assistant Disciplinary Counsel, Denver, for Complainant.

Mark P. Field, Pro Se, Denver.

PER CURIAM.

This lawyer discipline case began as a letter of admonition from the grievance committee to the respondent, Mark P. Field. Field demanded that the admonition be vacated and that a formal complaint be filed against him. *See* C.R.C.P. 241.7(5). Following the filing of a complaint, a hearing board recommended that Field be publicly censured and be ordered to work under the supervision of a practice monitor for one year. A hearing panel of the grievance committee approved the board's findings and recommendations. We accept the board's and panel's recommendations and publicly censure the respondent and impose the monitoring conditions.

I.

Mark P. Field was admitted to practice law in Colorado in 1980. The hearing board made the following findings by clear and convincing evidence.

Richard Mera is the owner of an automobile repair shop. In December 1993, he sold a used car to a customer. The automobile needed extensive repairs soon after the purchase, but Mera claimed that he was not responsible for the repairs. The customer brought an action against Mera in small claims court and won. Mera hired Field to appeal the judgment and paid Field a flat fee of $600. Field filed a notice of appeal on August 12, 1994 in the District Court for the City and County of Denver and filed the appeal brief on August 27, 1994. Mera posted an appeal bond in the amount of $2,500. In June 1995, Mera called asking about the status of the case and Field told him that the court had not yet ruled.

On August 21, 1995, the district court affirmed the small claims court judgment. A copy of the decision was mailed to Field's office on August 22. The hearing board found that the order was received by Field's office, but that Field did not recall seeing it. Between August 1995 and February 1996, Mera telephoned Field on one or two occasions about the appeal and Field told him that he had heard nothing about the case. Field took no steps to determine whether the court had in fact ruled on the appeal.

Frustrated by the delay and not hearing anything from Field, Mera called the district court and learned that the court had ruled against him the previous August and that the appeal bond he had posted had been disbursed to the plaintiff. Mera called Field's office and left a message for Field to call him back. While it was disputed whether Field called Mera back and left a message, it is not disputed that Field made no further attempts to contact Mera or to determine the status of the appeal. The hearing board found that Field did not personally learn about the district court order until March 1996, when Mera filed a request for investigation against him.

Field explained to the hearing board that at the time he handled the Mera appeal, he was also handling 1,500 to 2,000 other open cases, mostly collection cases. Because of the volume of his practice, and the fact that at the time he was a sole practitioner, his nonlawyer staff screened his mail and he personally saw only a small percentage of the mail. Field also moved his office while the Mera case was pending, but mail sent to the old address was picked up on a regular basis by one of his employees. This employee was ultimately asked to resign, however, because of poor job performance.

Field admitted that the Mera appeal had not been entered into a computer tickler program as it should have been. The board concluded that Field's conduct went beyond a single act of simple negligence. He was unaware that a final decision had been rendered in the appeal, causing Mera unnecessary anxiety over the case and making a further appeal essentially impossible, because of a number of negligent acts in combination. Field failed to enter the Mera case into his schedule in a way that would remind him to periodically check on its status; despite Mera's telephone calls, he did not check with the court about the case after June 1995; he failed to contact Mera after receiving some of Mera's calls; and he failed to delegate the review of his mail to ensure that communications from a court were calendared and brought to his attention, resulting in the loss of the district court's order. Taking these acts and omissions together, the board found that Field had violated Colo. RPC 1.3 (neglecting a legal matter entrusted to the lawyer). On the other hand, because Field never actually saw a copy of the court's order before the request for investigation was filed, the board determined that it had not been proven by clear and convincing evidence that Field violated Colo. RPC 1.4(b) (failing to explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation) because the occasion to explain the legal consequences of the order did not arise.

## II.

The hearing panel approved the board's findings and recommendation that Field be publicly censured and be required to undergo supervision of his practice for one year. Field has excepted to the recommended discipline as too severe, especially since the present proceedings arose from a letter of admonition that he had vacated. He points out that the hearing board determined that the level of misconduct was less serious than the inquiry panel assumed when it issued the letter of admonition. The hearing board found that it had not been proven that Field violated Colo. RPC 1.4(b).

The ABA *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) (ABA *Standards*) provides that, in the absence of aggravating or mitigating factors, a private censure "is generally appropriate when a lawyer is negligent and does not act with reasonable diligence in representing a client, and causes little or no actual potential injury to a client." *Id.* at 4.44. On the other hand, a public censure "is generally appropriate when a lawyer is negligent and does not act with reasonable diligence in representing a client, and causes injury or potential injury to a client." *Id.* at 4.43. Considering the hearing board's findings and the actual harm in this case, a private censure would ordinarily be sufficient. However, Field's disciplinary history is an aggravating factor. *See id.* at 9.22(a) (previous discipline is an aggravating factor for determining the proper disciplinary sanction).

He received a letter of admonition in 1987 for making an assertion in a civil complaint which he should have known was untrue. He received a second admonition in June 1996 for failing to advise the court of information he possessed concerning his client's whereabouts. Field also received a private censure in October 1984 (which stayed a suspension for one year and one day) because between the time of his application to the Colorado bar and his admission, he entered into a criminal conspiracy to defraud an insurance company and received a deferred judgment. He failed to report this to the board of law examiners, and did not report the money

gained in the course of the conspiracy as taxable income.

In addition to these three private sanctions, we suspended Field in 1997 for six months and required him to go through reinstatement proceedings before he could practice law again. *See People v. Field,* 944 P.2d 1252, 1257 (Colo.1997). Field was hired to have his client's criminal records sealed. *See id.* at 1253. However, he failed to take action for almost two years and did not respond to his client's telephone calls. *See id.* He then lied to the client's wife by telling her that he had filed a motion to seal the records when he had not. *See id.* Field also told her, falsely, that he was waiting to hear from court, and that a court date had been scheduled. *See id.*

The events in *Field* involved neglect and occurred during the same time period relevant to this case, and are therefore indicative of a pattern of misconduct, *see id.* at 9.22(c), rather than previous discipline, *see id.* at 9.22(a). *See People v. Regan,* 871 P.2d 1184, 1188 (Colo.1994). If the misconduct in this case had occurred *after* Field had been disciplined with the suspension, we would reject a public censure as too lenient.

The hearing board also found that Field had substantial experience in the practice of law, an additional factor in aggravation. *See id.* at 9.22(i). In mitigation, the board noted the absence of a dishonest or selfish motive, *see id.* at 9.32(b); and Field cooperated in these proceedings, *see id.* at 9.32(e).

Taking all of the above into account, we agree that a public censure in conjunction with the monitoring conditions below is appropriate. Accordingly, we accept the board's and panel's recommendations.

### III.

Mark P. Field is hereby publicly censured. He is also ordered to comply with the following conditions. Field must: (1) comply with the monitoring conditions attached as an appendix to this opinion for a period of one year following the date of this opinion; and (2) pay the costs of this proceeding in the amount of $1,159.95 within ninety days of the date of the opinion to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 300 South, Denver, Colorado 80202–5435.

### *Appendix*

### *Standard Conditions*

### *Monitoring of Practice by Another Attorney*

An attorney approved by the Office of Disciplinary Counsel shall review the respondent's legal files and method of handling the respondent's caseload for a period of one year following the issuance of a public censure to the respondent. The review procedures shall be as follows:

A. The respondent, Mark P. Field, shall demonstrate the existence of a workable reminder, or "tickler" system, and proof of a dual calendar system, or comparable case monitoring system, in effect in the respondent's office within thirty days of the issuance of a public censure to the respondent, and shall by the reports of the monitoring attorney demonstrate that both the reminder system and the dual calendar system, or comparable case-monitoring system, are operating effectively.

B. A caseload review meeting shall take place between the monitoring attorney and the respondent on this schedule:

(1) first six months: meeting once per month;

(2) second six months: meeting every other month.

C. At each meeting the following will take place:

(1) The respondent will prepare a list of current active files, which files will be reviewed by the monitoring attorney, together with the respondent. The monitoring attorney will take steps to verify that the list is complete.

(2) The monitoring attorney will make, and the respondent will document, specific suggestions necessary to assure that the caseload is being properly and professionally handled and that the respondent is progressing in a satisfactory manner.

(3) The monitoring attorney and the respondent will review the list of suggestions from the previous meeting to ensure that all suggestions for improvements have been implemented and that the respondent is in compliance with those suggestions.

(4) The monitoring attorney shall have access to and monitor, to the extent he or she deems necessary, all financial accounts of the respondent's practice, in order to assure that all funds are being handled properly.

D. Within ten days following each meeting, the respondent shall submit to the Office of Disciplinary Counsel a written report of the meeting, which report shall be signed by the monitoring attorney.

E. The monitoring attorney shall immediately disclose to the Office of Disciplinary Counsel any matters which are uncorrected or which represent significant problems requiring corrective attention. Copies of such correspondences shall be sent to the respondent. Such reports may result in new disciplinary charges against the respondent.

F. With the exception of the reporting requirements to the Office of Disciplinary Counsel set forth herein and other reporting required by the monitor's ethical and legal obligations, the monitor shall keep confidential all client information obtained through the monitoring process.

G. The respondent shall inform his clients that he may consult with another attorney on the case, and that if any client information is divulged to that attorney it will be held in confidence by the attorney subject to all attorney ethical requirements including Colo. RPC 1.6.

H. The respondent need not disclose the monitoring arrangement to his clients, but if he chooses to do so, he will inform the client clearly and in writing of the following limits on the monitor's work:

(1) that the monitor's check of specific cases may be random and the client's case may not be selected for review; and

(2) that neither the monitor nor the grievance committee is ensuring the quality of the respondent's work on individual cases, but that the monitoring function is a teaching and consulting function rather than a second opinion on the case or a guarantee of work quality on any case.