**In the Matter of ATTORNEY C, Attorney–Respondent.**

**No. 01SA19.**

Supreme Court of Colorado, En Banc.

May 13, 2002.

John Gleason, Attorney Regulation Counsel, Charles E. Mortimer, Jr., Assistant Regulation Counsel, Denver, Colorado, Attorneys for Petitioner.

Hall & Evans, L.L.C., David R. Brougham, Denver, Colorado, Attorneys for Attorney–Respondent.

Colorado District Attorney's Council, Peter A. Weir, Executive Director, Denver, Colorado, Donna Skinner Reed, Chief Appellate Deputy District Attorney, Golden, Colorado,

Attorneys for Amicus Curiae for Attorney–Respondent.

Justice KOURLIS delivered the Opinion of the Court.

This case involves an important issue of first impression: namely, what are the parameters of a prosecutor's ethical duty to disclose exculpatory material to the defense under Colo. RPC 3.8(d)? We hold that Rule 3.8(d) requires prosecutors to disclose exculpatory evidence to the defense in advance of any critical stage of the proceeding. The respondent [1] in these proceedings did not do so. However, we also hold that a prosecutor violates Rule 3.8(d) only if he or she acts intentionally. In this case, the hearing board did not find that the respondent acted intentionally. Therefore, we decline to find a violation of the rule, and we reverse the hearing board's imposition of a public censure.

## I. Facts

The complaint charged Attorney C,[2] an assistant district attorney, with misconduct in two separate preliminary hearings. In the first matter, a defendant, John Skidmore, faced second-degree assault, § 18–3–203(1)(g), 6 C.R.S. (2000) (intending to cause bodily injury to another, the actor causes serious bodily injury), a class 4 felony, § 18–3–203(2)(b). The case involved allegations of domestic violence. A preliminary hearing was scheduled in county court at 1:30 p.m. on Tuesday, May 19, 1998. The respondent represented the People; attorney George Buck represented Skidmore. On May 15, the Friday before the preliminary hearing, the respondent extended an offer to the defendant to plead guilty to third-degree assault. In preparing for the hearing on May 18, she examined the file and discovered a letter written by the alleged victim on May 14. In it, the victim recanted her earlier statements to the police that the defendant had pushed her down, breaking her finger. Instead, she now maintained that the defendant had bumped into her accidentally and she fell down. The letter was consistent with Skidmore's version of events.

The respondent realized that the letter was exculpatory evidence that she needed to provide to defense counsel. However, she rationalized that the letter was not material in the constitutional sense at the preliminary hearing stage because the letter would not change the outcome of the preliminary hearing, so she decided to withhold the letter from the defense until after the hearing. In addition, she did not modify or withdraw her plea offer in light of the victim's recantation. Both the respondent and Buck were present in court on May 19 for the preliminary hearing, and the hearing board found that although she "had sufficient time and opportunity to give Buck a copy of the letter or to advise him of it prior to the commencement of the preliminary hearing, she elected not to do so."

Buck saw that the alleged victim was not present in the courtroom to testify, and advised Skidmore that the case likely would be bound over to county court on a misdemeanor assault charge, rather than a felony in district court. On Buck's advice, Skidmore agreed to waive the preliminary hearing.

After the hearing, the respondent followed normal office procedures for discovery and placed the letter in a basket for a secretary to send to Buck. Buck received the letter two days after the hearing. Recognizing that the respondent had delayed disclosing the letter until after the hearing, Buck filed a motion for sanctions, referring to the disclosure obligations of Crim. P. 16 and Colo. RPC 3.8(d). The district attorney's office offered to dismiss the charges against Skidmore if Buck withdrew the motion for sanctions, and ultimately that was the outcome.

The second matter occurred five months later. The defendant, the victim's stepbrother (Stepbrother), was charged with sexually assaulting his eleven-year-old stepsister. Stepbrother's father was also charged with

1. Although the attorney is the petitioner in this court, because she was the respondent before the hearing board, we refer to her as the respondent throughout this opinion.

2. We identify the respondent as "Attorney C" because we are not disciplining her and do not wish the publication of this opinion to serve as de facto punishment.

sexually assaulting the girl, his stepdaughter. In multiple interviews with different people, the girl alleged that her stepbrother had licked or kissed her genital area. The trial court appointed Buck to represent Stepbrother. Again, the respondent was to represent the People at the preliminary hearing, which was scheduled for the afternoon of October 21, 1998. On the morning of the hearing, the respondent interviewed the victim in the district attorney's office. Donna Craig Rice, a victim advocate at the office, was present during the interview. For the first time, the girl denied any oral-genital contact with her stepbrother, and said she did not remember telling anyone that such contact had occurred. Instead, the victim stated that Stepbrother had touched her genital area with his hand and his penis.

The respondent recognized that this change in the girl's story was exculpatory evidence that had to be disclosed to the defense. She asked Rice to prepare a memo reflecting the girl's new story. The respondent decided not to inform Buck of the changed version herself before the hearing because she was concerned that her whole office could be disqualified if Buck called her as a witness. She consulted with her boss, the district attorney, who did not object to this course of action. Buck, the respondent, and Rice arrived at the courthouse forty-five minutes before the hearing, but neither Rice nor the respondent told Buck of the changes in the victim's testimony. The hearing board majority specifically found that the respondent had the time and opportunity to disclose the information prior to the preliminary hearing.

Instead, the respondent elicited testimony from a social services caseworker that child victims often alter their version of events over time. During direct examination, the victim testified that there had been genital to genital and manual contact between her and her stepbrother. The respondent did not ask her about oral-genital contact, and the victim did not testify regarding her denial that this had occurred. Buck moved to strike the victim's testimony about the genital and manual contacts because he had no prior knowledge of these allegations. The court overruled the objection, but reprimanded the respondent for not disclosing the new testimony to the defense before the hearing. The court ruled that it could not find the victim's statements implausible as a matter of law, and found probable cause to bind Stepbrother over to district court.

The day after the hearing, Buck received by first-class mail the memo that Rice had prepared under the respondent's direction. Buck filed a motion for sanctions, but the trial court denied it on the grounds that the respondent's failure to disclose the exculpatory statements would not have changed the outcome of the preliminary hearing. The district attorney dismissed the charges against Stepbrother in January 1999.

The presiding disciplinary judge and one hearing board member concluded that the respondent's conduct in both the Skidmore and Stepbrother cases violated Colo. RPC 3.8(d), which provides:

### Rule 3.8. Special Responsibilities Of A Prosecutor

The prosecutor in a criminal case shall:

. . .

(d) make *timely* disclosure to the defense of all evidence or[3] information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense. . . .

(Emphasis added.) Weighing the aggravating factors against the mitigating factors, the majority determined that a public censure would be the appropriate sanction. One board member dissented, finding no violation of Rule 3.8(d). The respondent appealed to this court pursuant to C.R.C.P. 251.27.

### II. Analysis

The respondent presents the following issues in the opening brief:

1. Whether Colo. RPC 3.8(d) applies to the failure to disclose recently discovered

---

**3.** There is a typographical error in the Colorado Revised Statutes Annotated with respect to Colo. RPC 3.8(d): "make timely disclosure to the defense of all evidence *of* information" should read "make timely disclosure to the defense of all evidence *or* information."

exculpatory information immediately prior to a preliminary hearing.

2. Whether a violation of Colo. RPC 3.8(d) can be established when a prosecutor fails to disclose exculpatory information, but there is no reasonable probability that had the information been disclosed ahead of time the outcome of the proceeding would have been different.

3. Whether the Hearing Board and PDJ erred in finding that the respondent violated Colo. RPC 3.8(d) in the Skidmore and Stepbrother cases.

The respondent makes two primary arguments: the first is that there can be no violation of Rule 3.8 when attorney regulation counsel fails to establish that, had the information been disclosed, the outcome of the proceeding would have been different. Second, the respondent makes an argument based on the language of the rule that the disclosure was "timely."

## A. Materiality

■ The respondent first argues that the evidence was not material to the outcome of the preliminary hearing. She does not argue that it was not constitutionally material to the outcome of the case as a whole, but rather that it would not have made a difference to the outcome of the preliminary hearing. In order to address her argument, we must first determine the extent to which Rule 3.8(d) includes a concept of materiality.

The hearing board[4] majority[5] held that the rule does not incorporate a *Brady* constitutional materiality standard, but rather is broader and more encompassing than such a standard would require. We recognize that there is support for that position,[6] but because we decline to impose inconsistent obligations upon prosecutors attempting to comply with both procedural rules and rules of professional conduct, we decline to adopt it.

In *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the United States Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *See also United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). Then, in *United States v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), the Court refined the *Brady* test. It treated exculpatory and impeachment evidence similarly for *Brady* purposes, *id.* at 676–77, 105 S.Ct. 3375, and abolished the distinction made in *Agurs* between situations where the defense makes a specific request for *Brady* material and where the defense makes either a general or no request at all for such material, *id.* at 682, 105 S.Ct. 3375 (Blackmun, J.); *see Kyles v. Whitley,* 514 U.S. 419, 433, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995).

■ The specific test for materiality is whether " 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.' " *Kyles,* 514 U.S. at 433, 115 S.Ct. 1555 (quoting *Bagley,* 473 U.S. at 682, 105 S.Ct. 3375 (opinion of Blackmun, J.)).

In *People v. District Court,* 790 P.2d 332 (Colo.1990), this court determined that "Colorado courts assessing the sufficiency of the prosecution's disclosure under Crim. P. 16(I)(a)(2) should evaluate the materiality of the undisclosed information, taking guidance from the *Bagley* standard." 790 P.2d at 338. Hence, the materiality standard of *Brady* and *Bagley* applies to Rule 16 disclosures in

---

4. The presiding disciplinary judge refers separately to the PDJ and hearing board in the findings and conclusions. When the PDJ is sitting with a hearing board, we view him to be acting solely as a member of that board, despite his status as the presiding officer of that board. *See* C.R.C.P. 251.18.

5. Richard P. Holme dissented from the majority opinion on the grounds that the conduct did not violate the rule at all.

6. *See Kyles v. Whitley,* 514 U.S. 419, 437, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) (dictum); *Lawyer Disciplinary Bd. v. Hatcher,* 199 W.Va. 227, 483 S.E.2d 810, 816 (1997); Richard A. Rosen, *Disciplinary Sanctions Against Prosecutors for Brady Violations: A Paper Tiger,* 65 N.C.L.Rev. 693, 708 (1986–87).

Colorado. Rule 16(I)(a)(2) mandates that "[t]he prosecuting attorney shall disclose to defense counsel *any* material or information within his possession or control *which tends to negate the guilt of the accused as to the offense charged or would tend to reduce the punishment therefor.*" (Emphasis added.)

The committee comment to Rule 3.8 states, "Because this provision is based to a considerable extent on the ABA Standards of Criminal Justice Relating to the Prosecution Function which many jurisdictions have adopted and because it deals with a specialized area of practice, the Committee felt it should leave this provision as it was set out in the Model Rules."

The comment to Model Rule 3.8(d) provides in part:

A prosecutor has the responsibility of a minister of justice and not simply that of an advocate. This responsibility carries with it specific obligations to see that the defendant is accorded procedural justice and that guilt is decided upon the basis of sufficient evidence. Precisely how far the prosecutor is required to go in this direction is a matter of debate and varies in different jurisdictions. *Many jurisdictions have adopted the ABA Standards of Criminal Justice Relating to Prosecution Function, which in turn are the product of prolonged and careful deliberation by lawyers experienced in both criminal prosecution and defense.*

Model R. Prof. Conduct 3.8 cmt., *reprinted as* Colo. RPC 3.8 cmt.

The ABA *Standards for Criminal Justice: Prosecution Function and Defense Function* 3–3.11(a) (3d ed.1993) provide that:

A prosecutor should not intentionally fail to make timely disclosure to the defense, at the earliest feasible opportunity, of the existence of all evidence or information *which tends to negate the guilt of the accused or mitigate·the offense charged or*

*which would tend to reduce the punishment of the accused.*[7]
(Emphasis added.)

Hence, the language of Crim. P. 16(I)(a)(2), Rule 3.8(d), and ABA Standard 3–3.11(a) is substantially identical. We have explicitly adopted a materiality standard with respect to our procedural rules, and we are disinclined to impose inconsistent obligations upon prosecutors. We therefore also adopt a materiality standard as to the latter, such that we read Rule 3.8(d) as containing a requirement that a prosecutor disclose exculpatory, outcome-determinative evidence that tends to negate the guilt or mitigate the punishment of the accused.

Given that standard, we now turn to the respondent's argument that the evidence was not exculpatory or outcome-determinative at the preliminary hearing, and, therefore, was not material at that particular stage of the case. We clarify that the materiality standard relates not to a specific proceeding in the criminal case, which could be a hearing on a bond or a hearing on the admissibility of certain evidence unrelated to the withheld evidence, but rather to the broader criminal proceeding itself. Material evidence, in this sense, is any evidence tending to be outcome determinative at trial. However, materiality itself is not time-sensitive, and does not come and go depending upon the nature of the next hearing. We do not accept the argument that the evidence need only be disclosed in advance of a proceeding at which that evidence would be specifically determinative. Rather, we conclude that if evidence is material to the outcome of the.trial, then the prosecutor must disclose that evidence in advance of the next critical stage of the proceeding—whether the evidence would particularly affect that hearing or not.

### B. Timeliness Under the Rule

In the alternative, the respondent argues that her disclosure of the evidence was sufficiently timely to satisfy the rule. Rule 3.8(d)

---

7. Similarly, I ABA *Standards for Criminal Justice* 3–3.11(a) (2d ed.1986) provide that:

It is unprofessional conduct for a prosecutor intentionally to fail to make disclosure to the defense, at the earliest feasible opportunity, of the existence of evidence *which tends to negate the guilt of the accused as to the offense charged or which would tend to reduce the punishment of the accused.*
(Emphasis added.)

mandates that the prosecutor make *"timely" disclosure of all exculpatory evidence.* "Timely" is defined neither by the Rules of Professional Conduct, nor by case law. *Cf.* § 2-4-101, 1 C.R.S. (2001) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage. Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly."). "Timely" is a word in common usage. The *New Shorter Oxford English Dictionary* defines "timely" as: "Occurring, done, or made at an appropriate or suitable time; opportune." II *New Shorter Oxford English Dictionary* 3314 (1993). The question is whether the respondent's disclosures, which the defense received after the Skidmore and Stepbrother preliminary hearings, were still timely. We determine that they were not.

Although a preliminary hearing is not constitutionally mandated, it is a procedure incorporated into our Rules of Criminal Procedure. It is a critical stage of a criminal proceeding, not only for such purposes as the Sixth Amendment right to counsel, *Coleman v. Alabama,* 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970); *Denbow v. Dist. Court,* 652 P.2d 1065, 1066 (Colo.1982), but also for case management purposes.[8] Notwithstanding the low burden the prosecution has to meet to have a defendant bound over for trial, a preliminary hearing is a serious part of the case. *See McDonald v. Dist. Court,* 195 Colo. 159, 161, 576 P.2d 169, 171 (1978) (stressing that "a preliminary hearing is a critical stage in the prosecution of a defendant and should not be conducted in a 'perfunctory fashion.' ") (quoting *Maestas v. Dist. Court,* 189 Colo. 443, 446, 541 P.2d 889, 891 (1975)).

For our purposes, therefore, the important thing is that, although a critical stage of the proceedings was about to occur, the respondent made a conscious decision to delay disclosure in both cases until after those proceedings concluded.

■ Under the respondent's approach, both the judge and defense attorney were unaware of the actual strength or weakness of the prosecution's case at the preliminary hearing, which could have an unfair effect on, for example, the conditions the court might place on a defendant's pretrial release, and also on the defendant's plea-bargaining position. We therefore hold that, when a prosecutor is aware of exculpatory evidence before any critical stage of the proceeding, she must disclose that evidence before the proceeding takes place.

The hearing board majority found that in both the Skidmore and Stepbrother matters, it was quite possible for her to disclose the evidence before the hearing. We understand that the respondent was worried about the possible disqualification of her office should she become a witness in the Stepbrother case. However, the hearing board concluded that Rice could have prepared a memorandum for defense counsel before the hearing. That finding is supported by the record. The memo that Rice prepared after the hearing was one paragraph long, consisting of about eighty words.

We agree with the hearing board majority that the respondent failed to disclose exculpatory evidence in a timely manner to the defense in both the Skidmore and Stepbrother matters; however, we decline to find a violation of the rule for the reasons that now follow.

### III.  Conclusion

In the area of discipline of prosecutors for discovery violations, there are no Colorado cases and very few elsewhere.[9] The reasons

---

**8.** Case management principles define critical events in the progress of a case as events that cause counsel to review their files, consider their strategy, and evaluate the prospects for settlement. *See People v. Jasper,* 17 P.3d 807, 812 (Colo.2001); David C. Steelman et al., *Caseflow Management: The Heart of Court Management in the New Millennium* 8-9 (2000); Maureen Solomon & Douglas K. Somerlot, *Caseflow Manage-*

*ment in the Trial Court: Now and for the Future* 3-6 (1987).

**9.** *See Comm. on Prof'l Ethics & Conduct of Iowa State Bar Ass'n v. Ramey,* 512 N.W.2d 569, 572 (Iowa 1994); *In re Carpenter,* 248 Kan. 619, 808 P.2d 1341, 1346 (1991); *In re Application for the Discipline of Morris,* 419 N.W.2d 70, 70 (Minn. 1987); *In re Brophy,* 83 A.D.2d 975, 442 N.Y.S.2d 818, 819 (1981); *Office of Disciplinary*

that prosecutors seldom face disciplinary proceedings in this area may be wide-ranging,[10] but for our purposes, it suffices to state that we face a matter of first impression.

## A.

There are generally three states of mind with respect to disciplinary violations: negligence, knowledge,[11] and intent. Negligence is defined as "the failure of a lawyer to heed a substantial risk that circumstances exist or that a result will follow, which failure is a deviation from the standard of care that a reasonable lawyer would exercise in the situation." ABA *Standards* definitions. Negligent violation of a court order or rule presumptively occasions a reprimand or admonition, depending upon whether the conduct causes injury or potential injury to a client or to a legal proceeding. ABA *Standards* 6.2. Knowledge is defined as the "conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result." ABA *Standards* definitions. Suspension is generally appropriate when a lawyer knowingly violates a rule and causes injury or potential injury. ABA *Standards* 6.2. Intent is defined as the "conscious objective or purpose to accomplish a particular result." ABA *Standards* definitions. Disbarment is generally appropriate when a lawyer knowingly violates a rule with the intent to obtain a benefit and causes serious injury or potentially serious injury. ABA *Standards* 6.2.

The hearing board majority here concluded that the respondent committed the first violation in the Skidmore case negligently.

As to the second violation in the Stepbrother case, the majority concluded that the respondent had been put on actual notice of her duty under Colo. RPC 3.8(d) by defense counsel in the Skidmore case. The majority noted that the term "knowingly" is defined in the introduction to the Rules of Professional Conduct as denoting "actual knowledge of the fact in question. A person's knowledge may be inferred from the circumstances." Accordingly, the majority concluded that the respondent committed the second violation knowingly.[12] The majority held that the negligent conduct warranted only a public censure, and then weighed aggravating factors against the mitigating factors of inexperience, absence of a dishonest or selfish motive, and a cooperative attitude toward the proceedings to arrive at an ultimate determination that public censure was also appropriate in the second case.

## B.

As we consider the conduct in this case, we first note that discovery violations in criminal cases are different from other kinds of disciplinary rule violations for a number of reasons. First, discovery issues arise in almost every criminal case. Trial courts routinely make findings of fact and enter orders and sanctions designed to respond to the severity of the violation. As a result, the problems are visible, immediately addressed, and any harm to the public or to the individual parties is dealt with in the context of the pending case. Not only is management, regulation, and supervision of discovery preeminently a trial court function, *see Samms v. Dist. Court*, 908 P.2d 520, 524 (Colo.1995), but we also have case law and rules of procedure specifically tailored to redress any discovery

*Counsel v. Jones*, 66 Ohio St.3d 369, 613 N.E.2d 178, 179–80 (1993); *Cuyahoga County Bar Ass'n v. Gerstenslager*, 45 Ohio St.3d 88, 543 N.E.2d 491, 491 (1989); *In re Illuzzi*, 160 Vt. 474, 632 A.2d 346, 347 (1993); *Read v. Va. State Bar*, 233 Va. 560, 357 S.E.2d 544, 546–47 (1987).

10. Fred C. Zacharias, *The Professional Discipline of Prosecutors*, 79 N.C.L.Rev. 721, 725–26 (2001); Edwin H. Auler, *Actions Against Prosecutors Who Suppress or Falsify Evidence*, 47 Tex. L.Rev. 642, 646 (1968–69).

11. With one exception,—misappropriation of client funds—we have equated "reckless" and

"knowing" conduct for analyzing the appropriate sanction. *People v. Small*, 962 P.2d 258, 260 (Colo.1998).

12. We disagree with the notion that respondent was made aware of the rule only through her brush with it in the first proceeding. All attorneys in Colorado are presumed to be aware of the rules and their import. However, given our holding in this case, whether her behavior was attributable to general or specific knowledge makes no difference.

violations. We neither wish to upset that process nor to interject regulatory counsel into it.

Indeed, when the court revised the attorney discipline system in 1998, it did so to make the system more responsive to the goal of protecting the public. As part of this goal, we revised the formal complaint and litigation system to assure greater attention to serious allegations of professional misconduct. The new grievance system is designed to "shift[ ] the emphasis from punishment to prevention ... [and to] protect the public as well as educate attorneys. The process will reduce delay and focus resources on the more serious cases filed." [13]

We also note that the Preamble to the Colorado Rules of Professional Conduct states that the purpose of the rules "can be subverted when they are invoked by opposing parties as procedural weapons." Colo. RPC pmbl. In the context of discovery in criminal cases, that danger is a real one. We do not wish to create a mechanism that could be used to obstruct the progress of a case.

Hence, we have an adjudicative system in place that deals regularly with discovery issues, and also an attorney grievance system that is ill-suited to addressing any but the most serious discovery violations.

### C.

Because we do not wish to interfere with the discretion of trial courts to handle discovery disputes in the way dictated by the facts of the case, and because we do not wish the possibility of a grievance proceeding to permeate every discovery dispute in criminal cases, we choose to read the rule itself as including the mens rea of intent.

As we noted above, the ABA *Standards for Criminal Justice: Prosecution Function and Defense Function* 3–3.11(a) (3d ed.1993) provide that:

A prosecutor should not *intentionally* fail to make timely disclosure to the defense, at the earliest feasible opportunity, of the existence of all evidence or information

which tends to negate the guilt of the accused or mitigate the offense charged or which would tend to reduce the punishment of the accused.

(Emphasis added.) We observe that the ABA specifically added "intentionally" to the standard subsequent to its original enactment. ABA *Standards for Criminal Justice* 3–3.11(a) history of standard (2d ed.1986).

The ABA standard anticipated that the rule would address only the most serious of cases in which conduct occurs that reflects upon the character of the prosecutor: conduct that cannot be fully addressed by orders relating to the underlying case. We agree that grievance proceedings should be limited to those circumstances in which a prosecutor intentionally withholds exculpatory evidence in violation of the rule.

As to this respondent, the hearing board found that her violation of 3.8(d) was negligent in the Skidmore case and knowing in the Stepbrother case. In neither case did the board find that her actions were accompanied by the intent necessary to justify a sanction, as we now hold necessary. As a result, we decline to find a violation of the rule.

Additionally, we realize that we now interpret the requirements of Colo. RPC 3.8(d) for the first time. *See In re Sather*, 3 P.3d 403, 415 (Colo.2000) (holding that where our opinions have not clarified the requirements under a specific rule of professional conduct, the court may decline to impose a sanction for the violation). We have never previously clarified that a prosecutor must disclose exculpatory evidence prior to any critical stage of the proceeding. Hence, because the rule was unclear, respondent could not have had an intent to withhold the evidence prior to the preliminary hearing in contravention of ethical mandate.

In summary, although we conclude that the respondent failed to disclose material evidence in a timely manner, we decline to find a violation of Rule 3.8(d) because her conduct was not intentional. We therefore

---

**13.** Linda Donnelly et al., *How the New Attorney Regulation System Will Work,* 28 Colo. Law. 57, 59 (Feb.1999).

reverse the hearing board's judgment. Each party shall be responsible for its own costs in this proceeding.