1
 THE PEOPLE OF THE STATE OF COLORADO Complainant: v. KRISTIN MARIE MUSCATO, #47850 Respondent: No. 24PDJ047
Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado
July 30, 2024
 
          The
 Presiding Disciplinary Judge issued an opinion and approved
 the parties' stipulation to discipline, publicly
 censuring Kristin Marie Muscato (attorney registration number
 47850). The public censure is effective July 30, 2024.
 
 
          While
 representing two clients at the time she engaged in
 misconduct underlying a separate disciplinary suspension,
 Muscato failed to act with reasonable diligence, failed to
 adequately communicate with her clients about the status of
 the matters, and failed to obey court orders. In one of those
 matters, she also failed to communicate the basis or rate of
 her fee in writing. Muscato's misconduct in the two
 client representations was similar to, and contemporaneous in
 time with, misconduct in another disciplinary case and was
 largely driven by the same personal circumstances that
 mitigated her misconduct in that matter.
 
 
          Through
 this conduct, Muscato violated Colo. RPC 1.3 (a lawyer must
 act with reasonable diligence); Colo. RPC 1.4(a)(3) (a lawyer
 must keep the client reasonably informed about the status of
 the matter); Colo. RPC 1.5(b) (a lawyer must communicate the
 basis or rate of fee in writing); and Colo. RPC 3.4(c) (a
 lawyer must not knowingly disobey a court order).
 
 
          The
 case file is public per C.R.C.P. 242.41(a). Please see the
 full opinion below.
 
 2
 
          
 OPINION APPROVING STIPULATION TO DISCIPLINE UNDER
 C.R.C.P. 242.19(C)
 
 
           BRYON
 M. LARGE PRESIDING DISCIPLINARY JUDGE
 
 
          Before
 the Presiding Disciplinary Judge ("the Court") is a
 "Stipulation to Discipline Pursuant to C.R.C.P.
 242.19" filed on June 3, 2024, by Jacob M. Vos, Office
 of Attorney Regulation Counsel ("the People"), and
 Kristin Marie Muscato ("Respondent"). On June 28,
 2024, the Court held a hearing on the stipulation, during
 which it invited further briefing. On July 16, 2024, the
 People filed a "Brief in Support of the Parties'
 Stipulation."
 
 
          I.
 CASE NUMBER 23PDJ057
 
 
          On
 October 23, 2023, in case number 23PDJ057, this Court
 approved a stipulation suspending Respondent for six months,
 all to be stayed pending her successful completion of a
 two-year probation with conditions. Respondent was sanctioned
 for misconduct that violated Colo. RPC 1.3, Colo. RPC
 1.4(a)(3)-(4), Colo. RPC 1.15A(a), Colo. RPC 1.15D, Colo. RPC
 1.16(d), and Colo. RPC 8.4(c). Since the time that the Court
 approved that stipulation, the People were alerted to and
 investigated Respondent's conduct in two other
 matters-the A.C. matter and the M.W. matter-that occurred
 around the same time of her conduct underlying case number
 23PDJ057.
 
 
          II.
 THE PARTIES' STIPULATION[1]
 
 
          A.C.
 Matter
 
 
          In
 November 2022, A.C. hired Respondent to represent her in an
 allocation of parental responsibilities matter in Weld
 County. A.C. paid Respondent a $3,500.00 retainer, to be
 billed
 
 3
 
 against hourly. The matter was set for an initial status
 conference on December 22, 2022. On that date, however, the
 court presiding in that matter closed due to inclement
 weather. The court ordered Respondent to reset the matter
 within fourteen days or submit a status report. Respondent
 did neither.
 
 
          On
 April 27, 2023, the court issued a delay prevention notice
 and order. At the time, A.C.'s former spouse had not
 filed a response to A.C.'s petition, and neither party
 had yet filed the required financial disclosures. The court
 cautioned that failure to set an initial status conference
 would result in dismissal for failure to prosecute.
 Respondent set the initial status conference, as ordered.
 
 
          On May
 26, 2023, for the first time since the representation began
 six months prior, Respondent sent A.C. an invoice for her
 services. In early June 2023, A.C. asked Respondent for a
 refund and terminated the representation. Respondent refused
 to issue a refund, asserting that she had earned the full
 retainer.
 
 
          M.W.
 Matter
 
 
          On June
 1, 2022, M.W. filed a pro se motion against S.N. concerning
 parenting time disputes. The court in that matter entered a
 contempt citation against S.N. On June 24, 2022, M.W. hired
 Respondent to represent him, paying a $3,500.00 retainer.
 Respondent provided neither a basis nor a rate of her fee in
 writing to M.W. Nor did she specify the scope of the
 representation.
 
 
          On
 August 28, 2022, the court granted S.N.'s motion to
 restrict M.W.'s parenting time. On October 12, 2022, the
 court appointed a child and family investigator and ordered
 that a report be filed within 160 days.
 
 
          On
 December 2, 2022, Respondent's office messaged M.W.,
 stating that Respondent's son, who had been hospitalized
 for most of the prior month, had recently been readmitted. In
 mid-December 2022, M.W. requested an itemized invoice.
 Respondent replied on the same date, promising to call M.W.
 Respondent also admitted that she was behind on billing and
 vowed to get M.W. an invoice soon, but she also advised M.W.
 that his account balance was in the negative. Respondent sent
 M.W. a request for payment through her case management system
 but did not send an itemized invoice, as she believed their
 call obviated the need for an itemized invoice.
 
 
          On
 March 7, 2023, the court held a hearing to address parenting
 time restrictions and disputes. On March 12, 2023, the court
 issued a written order awarding attorney's fees and costs
 to M.W. Two days later, the court ordered Respondent to file
 an affidavit of attorney's fees and costs by April 4,
 2023, and it notified the parties that failure to do so would
 result in the issue being deemed abandoned.
 
 4
 
          Around
 March 21, 2023, Respondent was hospitalized for twenty-one
 days due to sepsis. Respondent's office timely notified
 M.W. of her hospitalization. But Respondent failed to file
 the affidavit of attorney's fees and costs by the
 deadline of April 4, 2023. Respondent was released from the
 hospital on April 8, 2023.
 
 
          On
 April 19, 2023, the parties appeared in court. Respondent
 orally moved for an extension of time to file the affidavit
 of attorney's fees and costs. The court denied the motion
 but invited Respondent to file a motion under C.R.C.P. 60.
 Respondent did not file such a motion.
 
 
          On May
 19, 2023, the court held a permanent orders hearing and
 entered various orders. The court also ordered Respondent to
 file a proposed order of sanctions within fourteen days.
 
 
          On May
 27, 2023, Respondent informed M.W. that she had waived
 $3,125.00 in fees, which represented the awarded amount for
 which she had failed to file a fee affidavit. Respondent
 advised M.W. to review the online case management portal and
 pay the remaining balance shown in the invoice right away.
 This was the first invoice Respondent issued to M.W., even
 though the representation began in June 2022, nearly one year
 earlier. That invoice reflected M.W. had paid a total of
 $11,300.00 and had an outstanding balance of $8,417.75. M.W.
 replied, stating he would pay Respondent $800.00 after she
 submitted the proposed sanctions order. At the time, M.W.
 operated under the belief that Respondent only needed $800.00
 to complete the case and that he would owe no money
 thereafter.
 
 
          On June
 2, 2023, the date the proposed sanctions order was due, M.W.
 texted Respondent to inquire if she was going to meet the
 court's deadline, which was quickly approaching.
 Respondent replied that if the document were filed by 11:59
 p.m., it would be timely. Respondent also inquired about
 payment. She offered to remove the entire amount for the
 contempt matter but required M.W. to pay the overdue balance.
 Respondent then filed the proposed sanctions order. On June
 16, 2023, M.W. terminated Respondent.
 
 
          Respondent's
 invoice dated May 27, 2023, remains outstanding. While
 Respondent accurately tracked M.W.'s deposits into her
 trust account, she failed to accurately track her withdrawals
 related to M.W.'s matter. Respondent is unable to produce
 any relevant accounting records regarding those withdrawals.
 
 
          The
 Parties' Sanctions Analysis
 
 
          The
 parties stipulate that Respondent's conduct in the A.C.
 and M.W. matters violated Colo. RPC 1.3 (a lawyer must act
 with reasonable diligence); Colo. RPC 1.4(a)(3) (a lawyer
 must keep the client reasonably informed about the status of
 the matter); Colo. RPC 1.5(b) (a lawyer must communicate the
 basis or rate of the lawyer's fee in writing); and Colo.
 RPC 3.4(c) (a lawyer must not knowingly disobey a court
 order).
 
 5
 
          The
 parties agree that Respondent violated her duty to
 communicate, her duty to comply with court orders, her duty
 to maintain required trust account records, and her duty to
 provide her client with a written basis for the fee; that she
 did so recklessly; and that she harmed her relationships with
 clients and impeded the courts from functioning efficiently.
 
 
          To
 establish a presumptive sanction for Respondent's
 admitted misconduct, the parties look to ABA
 Standard 4.43 of the American Bar Association
 Standards for Imposing Lawyer Sanctions ("ABA
 Standards"),[2] which calls for public censure when a
 lawyer negligently fails to act with reasonable diligence in
 representing a client, thereby injuring or potentially
 injuring a client. The parties also rely on ABA
 Standard 6.23, which provides that public censure is
 generally appropriate when a lawyer negligently fails to
 comply with a court order or rule, thereby injuring or
 potentially injuring a client or interfering or potentially
 interfering with a legal proceeding. The parties agree that
 three aggravating factors under ABA Standard 9.22
 should apply, including Standard 9.22(a) for prior
 disciplinary offenses, which they agree should be afforded
 moderate weight; Standard 9.22(c) for a pattern of
 misconduct, which they agree should be given moderate weight;
 and Standard 9.22(d) for multiple offenses, which
 they agree warrants average weight. The parties also agree
 that three mitigating factors under ABA Standard
 9.32 should apply: Standard 9.32(b) for
 Respondent's absence of a dishonest or selfish motive,
 which the parties agree should carry average weight;
 Standard 9.32(c) for Respondent's personal or
 emotional problems, which they agree should be afforded
 significant weight; and Standard 9.32(e) for
 Respondent's cooperative attitude toward proceedings,
 which the parties agree should be given average mitigating
 credit. Based on these elements, the parties ask the Court to
 publicly censure Respondent.
 
 
          The
 parties also observe that Respondent's misconduct in the
 A.C. and M.W. matters occurred in the same timeframe as her
 misconduct in case number 23PDJ057, that it implicates
 similar rules, and that it was largely driven by the same
 family health crises that contributed to the misconduct in
 the earlier case. They argue that if the People had known
 about the A.C. and M.W. matters at the time they investigated
 case number 23PDJ057, the parties likely would have resolved
 them through a global resolution in that case for a six-month
 stayed suspension. The parties contend that the public
 censure here thus serves to notify the public of
 Respondent's additional misconduct while the stayed
 suspension and probationary terms in case number 23PDJ057
 adequately address that misconduct.
 
 
          III.
 ANALYSIS
 
 
          The
 Court begins its analysis by noting its authority to exercise
 discretion in rejecting or approving stipulations in
 accordance with the considerations governing imposition of
 disciplinary sanctions.[3] Indeed, the Colorado Supreme Court has
 granted this Court wide
 
 6
 
 discretion and flexibility in assigning sanctions when
 adjudicating lawyer misconduct.[4] When reviewing stipulations, the
 Court endeavors to honor parties' agreements and is
 favorably inclined to accept targeted and proportionate
 agreements that protect the public and promote confidence in
 the legal profession.
 
 
          The
 parties agree that the Court should impose public censure,
 leaning heavily on ABA Standards 4.43 and 6.23. But
 those Standards apply only when a lawyer acts with a
 negligent mental state. Here, however, the parties agree that
 Respondent acted with a reckless mental state, which, for
 purposes of applying the ABA Standards, equates to a
 knowing mental state.[5]As such, a proper analysis must begin with
 ABA Standard 4.42(a), which provides for suspension
 when a lawyer knowingly fails to perform services for a
 client and causes injury or potential injury to a client, as
 well as ABA Standard 6.22, which provides for
 suspension when a lawyer knows that she is violating a court
 order and causes injury or potential injury to a client or
 causes interference or potential interference with a legal
 proceeding. Under these Standards, suspension, not
 public censure, is the appropriate baseline for a sanctions
 analysis.
 
 
          The
 parties' alternative argument for public censure is
 better grounded legally and equitably. The parties argue that
 if the People had been aware of Respondent's misconduct
 in the A.C. and M.W. matters during their investigation in
 case number 23PDJ057, the misconduct here would have been
 included in a global resolution. They argue that the
 probationary conditions in that case adequately address the
 misconduct at issue here. And they stress that public censure
 both protects the public by putting it on notice of this
 misconduct and avoids imposing needless additional conditions
 that serve no regulatory objective.
 
 
          In
 reviewing case number 23PDJ057 as well as the stipulated
 facts here, the Court agrees with the parties that it would
 likely have approved the stipulation in case number 23PDJ057
 with similar terms even if these two matters were included.
 The Court also agrees with the parties that an additional
 period of suspension or supplemental probation requirements
 would serve no practical purpose in this circumstance. And
 the Court agrees that public censure puts the public on
 notice of Respondent's misconduct. In short, the
 parties' equitable resolution satisfies the interests of
 justice.
 
 
          Though
 this case bears an uncommon posture, the Court is aware of
 other cases that offer guidance in this matter. In People
 v. Rodriguez, the Colorado Supreme Court declined to
 impose a six-month reciprocal suspension where the lawyer,
 whose license was suspended for ninety days, had already
 served over two years without seeking
 reinstatement.[6] Because the Rodriguez court found
 that no good purpose would be served by imposing an
 additional period
 
 7
 
 of suspension, it instead publicly censured the
 lawyer.[7] In People v. Cain, the Colorado
 Supreme Court publicly censured a suspended lawyer after the
 lawyer engaged in the unauthorized practice of law during his
 suspension.[8] The lawyer had never reinstated from a
 ninety-day suspension, resulting in an actual period of
 suspension of nearly eight years.[9] Though the lawyer's
 misconduct ordinarily warranted suspension, the Cain
 court publicly censured the lawyer, determining that an
 additional period of suspension was unnecessary because the
 lawyer was already required to pass the bar examination
 before petitioning to reinstate from his
 suspension.[10] Finally, in People v. Field, a
 lawyer was publicly censured for misconduct that occurred
 during the same period as other misconduct underlying the
 lawyer's prior six-month suspension.[11] The Colorado
 Supreme Court held, "If the misconduct in this case had
 occurred after Field had been disciplined with the
 suspension, we would reject a public censure as too
 lenient."[12]
 
 
          Thus,
 in accordance with this precedent and in the Court's
 favorable exercise of discretion, the Court concludes that
 public censure is an appropriate resolution in this limited
 circumstance. The Court therefore APPROVES the stipulation.
 
 
 ---------
 
 
 Notes:
 
 
 [1] The parties stipulate to the facts
 recited in this section.
 
 
 [2] Found in ABA Annotated Standards
 for Imposing Lawyer Sanctions (2d ed. 2019).
 
 
 [3] C.R.C.P. 242.19(c).
 
 
 [4] In re Att'y F., 2012 CO
 57, ¶ 19.
 
 
 [5] See In re Att'y C., 47
 P.3d 1167, 1173 n.11 (Colo. 2002) ("With one
 exception-misappropriation of client funds-we have equated
 'reckless' and 'knowing' conduct for
 analyzing the appropriate sanction.") (citing People
 v. Small, 962 P.2d 258, 260 (Colo.1998)).
 
 
 [6] 937 P.2d 1210, 1211 (Colo.
 1997).
 
 
 [7] Id.
 
 
 [8] 957 P.2d 346, 347 (Colo.
 1998).
 
 
 [9] Id.
 
 
 [10] Id.
 
 
 [11] 967 P.2d 1035, 1036-37 (Colo.
 1998).
 
 
 [12] Id. at 1037 (emphasis in
 original).
 
 
 ---------