**The PEOPLE of the State of Colorado, Complainant.**

v.

**James E. PRESTON, Respondent.**

**No. 10PDJ060.**

Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.

Sept. 2, 2011.

On June 28 and 29, 2011, a Hearing Board composed of CHARLES F. GARCIA and FREDERIC (JERRY) K. CONOVER, members of the bar, and WILLIAM R. LUCERO, the Presiding Disciplinary Judge ("PDJ"), held a C.R.C.P. 251.18 hearing. Margaret B. Funk appeared on behalf of the Office of Attorney Regulation Counsel ("the People"), and James E. Preston ("Respondent") appeared pro se. The Hearing Board now issues the following "Opinion and Decision Imposing Sanctions Pursuant to C.R.C.P. 251.19(b)."

## OPINION AND DECISION IMPOSING SANCTIONS PURSUANT TO C.R.C.P. 251.19(b)

### I. *SUMMARY*

The People allege Respondent failed to timely prosecute his client's case, engaged in unnecessary discovery disputes while diso-beying court orders to provide discovery and disclosures, failed to adequately communicate with his client, refused to return his client's file after withdrawing from the representa-tion, and defied court orders to return the file over the course of more than two years. The Hearing Board concludes the People clearly and convincingly proved Respondent violated Colo. RPC 1.1, 1.3, 1.4(a) and (b), 1.5(a), 1.16(d), 3.2, 3.4(c), and 3.4(d) and finds suspension of one year and one day appropri-ate under these circumstances.

### II. *PROCEDURAL HISTORY*

The People filed a complaint on June 1, 2010, and an amended complaint on June 7, 2010. Respondent filed an answer on June 29, 2010, and a supplement to his answer on July 14, 2010. A hearing was scheduled for January 18, 2011, but the PDJ granted the People's motion to continue on December 22, 2010, resetting the hearing for June 28, 2011. On June 6, 2011, the People filed a motion to dismiss without prejudice their Claim IV,[1] which alleged Respondent charged an unrea-

---

1. The People captioned in error their pleading, "Motion to Dismiss Claim V Without Prejudice." At the hearing, the PDJ clarified, and the People confirmed, that the People sought to dismiss without prejudice Claim IV of their complaint.

sonable fee. The PDJ orally granted the People's motion immediately prior to commencement of the hearing on June 28, 2011, and he entered a written order on July 21, 2011.

At the hearing, the Hearing Board heard testimony from Respondent, T.R. Rice, Daniel Hoch, and Erin Johnson, and the PDJ admitted the parties' stipulated exhibit 1 and the People's exhibits 1–8, 10–11, 13–14, 16–18, 20, 22–30, 32–53, 58, and 63–64.

## III. FINDINGS OF FACT AND RULE VIOLATIONS

The Hearing Board finds the following facts and rule violations have been established by clear and convincing evidence.

### Jurisdiction

Respondent took the oath of admission and was admitted to the bar of the Colorado Supreme Court on June 20, 1991. He is registered upon the official records, attorney registration number 20578, and is thus subject to the jurisdiction of the Hearing Board in these disciplinary proceedings.[2] Respondent's registered business address is P.O. Box 120, Lewis, Colorado 81327–0120.

### Background

Daniel Hoch ("Hoch") owns and operates Daniel's Concrete and Excavation, a Cortez, Colorado, business that works on a wide range of construction projects requiring concrete pouring and excavation. Hoch successfully bid to provide such services with general contractor Orr Construction ("Orr") in connection with the construction of a Durango, Colorado, Grease Monkey garage for real property owner Summerwood Financial ("Summerwood").

Upon completion of the project, Hoch consulted with Cameron Secrist ("Secrist"), a local attorney, to file a mechanic's lien against Orr for the work he performed on the project; Hoch believed he had not been paid in full for labor, materials, and improvements, including what he estimated to be more than thirty change orders for work completed outside the original scope of his subcontract. Some time shortly thereafter, Hoch, with Secrist's help, filed and served an amended lien.

In June 2007, Hoch traveled to Denver to meet with Orr representatives in an effort to resolve his payment dispute, bringing with him a box of documents in support of his demands. The parties were not able to reach an agreement, however, and Hoch returned to southwest Colorado with his documentation but without satisfaction of his claims. Hoch then sought legal counsel to foreclose on his mechanic's lien. He first approached Secrist, who did not feel equipped to handle prosecution of the case. So Hoch turned to Respondent, whom he had retained in a similar case in which he received a favorable judgment. After investigating the case, Respondent agreed to represent Hoch and entered his appearance as Hoch's counsel of record in La Plata District Court case number 07CV 118, Consolidated Electric v. Brown et al., ("La Plata litigation"), an extant suit by other lien claimants against Orr and Summerwood concerning the Durango Grease Monkey project.

Around this time, Respondent met with Hoch, who gave him a set of binders with documentation supporting his claims, including his contract with Orr, invoices, records of payment, change orders, and correspondence.[3] The Hearing Board finds these are the same documents Hoch took to Denver in June 2007 for settlement negotiations. Respondent also visited the La Plata County courthouse to conduct a title search of the real property on which the Grease Monkey was built and to review Hoch's recorded lien and the notice of lien. He chose not to make copies of any documents while there. Based on his review of the recorded lien, Respondent also filed a change of lien in an attempt to correct errors in Hoch's lien filing.

On October 14, 2007, Respondent contacted T.R. Rice ("Rice"), who served as outside counsel for Orr in the La Plata litigation. Respondent alerted Rice that Hoch would intervene in that case and inquired whether

---

2. See C.R.C.P. 251.1(b).

3. Ex. 36 at 20:10–25; 21:1–7.

Orr opposed the intervention.[4] Rice said Orr did not object, but because he questioned the legal bases for the breach of fiduciary duty and trust fund claims, Rice cautioned Respondent to conduct additional discovery before asserting those claims.[5] Instead, on October 15, 2007, Respondent filed the motion to intervene and complaint in intervention on Hoch's behalf.[6] The complaint asserted that Hoch held a valid mechanic's lien against Orr and Summerwood, and it included claims for breach of contract, breach of fiduciary duty, quantum meruit, and civil theft.[7] A copy of the lien was not attached to the complaint.

### Disclosures and Discovery

Orr's attorney, Rice, gleaned from early communications with Respondent that telephone conversations were not going to be productive and that written missives would need to be routed through e-file to verify they had been received. By late January 2008, Rice had, without success, informally requested that Respondent provide a copy of Hoch's recorded lien.[8] He later reminded Respondent that his C.R.C.P. 26(a)(1) disclosures had come due.[9] Rice testified that without reviewing the notice of lien, the recorded lien, and the documents quantifying Hoch's claims, he was in no position to discuss settlement on Orr's behalf. More than four months after Hoch's complaint was filed, Rice was still attempting to "figure out the lay of the land." Said Rice, "Unless I know there's a valid lien or trust fund claim, I'm shadowboxing."[10]

In the meantime, Hoch was experiencing financial trouble and had pinned his hopes on a quick and early settlement "to get the money [he] needed." Even so, Respondent stalled on providing disclosures, contending the case was not yet at issue. Not until March 1, 2008, did Respondent file Hoch's C.R.C.P. 26(a)(1) disclosure statement.[11] In these initial disclosures, Respondent identified the following documents in his custody and control as pertinent to the allegations of Hoch's complaint:

1. Any and all documents included on the attached CD rom (TBA).

2. Any pleadings filed in the case.

3. Any and all items, documents or tangible things disclosed by the Defendants.[12]

The disclosures also noted that documents were available for inspection "if not included on the attached CD rom." [13]

Notwithstanding this certification, Respondent did not list by individual name or category the documents allegedly contained on the CD–ROM, nor did he enclose a CD–ROM when he transmitted these disclosures to Orr's attorney, Rice.[14] Indeed, he never created a CD–ROM. Rice recalls asking Respondent to produce the CD–ROM and volunteering to pay the costs of copying the disc, but he received no response. Instead, Rice became aware of a May 16, 2008, status report Respondent had submitted to the court that stated Hoch had made full disclosures and noted "Orr was given copies of all disclosed documents prior to litigation and [has] them." [15]

On behalf of Orr, Rice complained to the court in a June 25, 2008, motion for sanctions that he had not been served with Respon-

---

4. Ex. 3.

5. *Id.*

6. Exs. 1 & 2.

7. Ex. 2.

8. Ex. 8 at Preston000234.

9. Ex. 4.

10. Rice articulated these concerns in a February 9, 2008, motion to require disclosures. He wrote, "absent the disclosures of certain parties, most notably those of Hoch given the magnitude and the subject matter of its claims, and absent the ability to engage in discovery to further explore the basis for those claims, the ADR process will not be particularly useful.'" Ex. 5 at 4.

11. Ex. 5 at 3. Having received Orr's motion arguing the case was at issue, the court ordered Hoch to make his mandated disclosures.

12. Ex. 6 at 5.

13. *Id.*

14. Respondent faxed these initial disclosures to Rice. Ex. 8 at 4.

15. Ex. 7 at 2.

dent's status report. Rice also alleged the report contained misstatements concerning Respondent's compliance with disclosure obligations. Specifically, Rice averred he had received "*nothing* in the form of documents" from Respondent, who had failed to produce information "most basic to [the] case, that being a copy of the notice of intent to [file a] lien that purportedly supports [Hoch's] lien claim."[16] Rice also contradicted Respondent's representation that Orr had been given copies of all disclosed documents prior to litigation, insisting instead that his client Orr was in possession of only a "smattering of documents" informally provided by Hoch's prior counsel.[17]

In early July 2008, Rice wrote to Respondent again to request a copy of the CD–ROM,[18] which Rice had begun to view as the "holy grail" substantiating Hoch's claims. Respondent replied a week later, writing, "The CD rom you are seeking is attorney work product, however, you may view it in our office, on reasonable notice, with an appointment."[19] He also instructed Rice to bring the documents Orr had disclosed as relevant so both lawyers could simultaneously examine the other party's disclosures.

Rice, who lives and works in the Denver metropolitan area, testified that he thought Respondent's invitation to travel to Dolores to review the CD–ROM was "foolish" and would have had an "adverse impact on the economics" of settling the case. Rice also protested in a reply for his motion for sanctions, "Exactly how documents disclosed pursuant to C.R.C.P. 26(a)(1) can be work product and subject to any protection or other limitation of review or use is unclear, and exactly why counsel for Orr should travel to Dolores to review a CD–ROM that costs roughly $5.00 to re-produce and mail is even less clear."[20]

On July 31, 2008, Rice served Orr's first set of discovery requests, which specifically asked for Hoch's notice of intent to file a lien and his notice of lien.[21] Just a week later, in an August 7, 2008, letter, Rice again exhorted Respondent to provide—at Orr's expense—copies of all documents identified in Hoch's initial disclosures.[22] And in an August 18, 2008, motion, Rice asked the court to compel Respondent to produce relevant documents, including the CD–ROM identified in Hoch's initial disclosures.[23] All of these entreaties went unanswered, although Respondent filed an August 19, 2008, motion requesting an extension of time to respond to Orr's discovery requests.[24] That month, Rice resolved to move forward to file on Orr's behalf four partial summary judgment motions, even in the absence of basic disclosures by Respondent.

Rice sent Respondent another letter on October 26, 2008, reminding him that October 19, 2008—the date of the extension Respondent sought in his motion for additional time—had come and gone, yet Respondent had not responded to Orr's discovery requests. Nevertheless, Respondent failed to comply with his discovery obligations. As such, Rice filed another motion to compel discovery and for an award of fees and costs on November 6, 2008.[25]

On November 12, 2008, the court ruled on Orr's outstanding motions, awarding Orr summary judgment on Hoch's quantum meruit and mechanic's lien claims,[26] but it al-

16. Ex. 8 at 4.

17. *Id.*

18. Ex. 9.

19. Ex. 11.

20. Ex. 13 at 3.

21. Ex. 14 at 8.

22. Ex. 15.

23. Ex. 16 at 5. Rice also sought an award of attorney's fees and costs in this motion.

24. Ex. 17.

25. Ex. 24.

26. Ex. 22. The court noted that Hoch's summary judgment response attached exhibits showing the notice of intent to file the mechanic's lien was given on April 19, 2007, fourteen days *after* the mechanic's lien was filed with the La Plata County clerk and recorder. Because the governing statute, C.R.S. § 38–22–109(3), requires notice of intent to be given ten days *prior* to filing the lien, the court concluded Hoch's mechanic's lien was invalid. Rice testified that he first received this notice of lien when Respondent at-

lowed Hoch to re-file his trust fund claim under a different statutory provision. The court also granted Orr's motion to compel in its entirety and ordered Hoch to give Orr "each and every document identified or otherwise alluded to in Hoch's C.R.C.P. 26(a)(1) disclosures within 10 days of the entry of this order." [27] In addition, the court assessed against Respondent the attorney's fees and costs Orr had incurred in attempting to obtain Hoch's C.R.C.P. 26(a)(1) disclosures.[28]

Respondent promptly amended Hoch's complaint. But instead of complying with the court's directive to provide disclosures, Respondent waited twelve days to file a motion for clarification and reconsideration, in which he asked the court "to clarify its order and state what additional documents it is ordering the Plaintiffs to disclose (that the ORR Defendants do not already have)." [29] Sometime shortly thereafter, Orr—rather than its attorney, Rice—received a box from Cortez via U.P.S. bearing no return address and enclosing no transmittal letter, but containing a jumble of unidentified photocopied documents, many of which Orr had earlier produced to Hoch.[30] Rice correctly assumed that Hoch, not Respondent, had forwarded these documents to Orr.[31] Rice testified he also received a facsimile transmission accompanied by forty pages of documents, but the facsimile cover sheet failed to identify the sender and subject of the facsimile. A little more than a week after receiving the U.P.S. box, Rice submitted to the court a status report in which he protested that Hoch had not fully complied with the court's order.[32]

On January 31, 2009, the court granted Orr's proposed order to dismiss certain counts of Hoch's amended complaint.[33] In particular, the court dismissed on the basis of res judicata Hoch's amended claim to foreclose on the same mechanic's lien the court had rejected in November 2008. Hoch's amended quantum meruit claim, which Respondent unsuccessfully pursued in the original complaint, was also dismissed. As such, the court ordered the release of any and all notices of lis pendens associated with Hoch's asserted mechanic's liens.

Throughout January 2009, Respondent made no additional disclosures nor provided any responses to the discovery requests Rice had filed on Orr's behalf. On February 4, 2009, the court issued a minute order directing Respondent to comply with its November 12, 2008, order within fifteen days and warning that failure to do so could result in dismissal of Hoch's amended complaint and an award of attorney's fees.[34] Nevertheless, Rice certified on February 28, 2009, that he had not received the CD–ROM identified in Hoch's March 1, 2008, disclosures, nor had he received any written discovery responses, save for an "undated, unsigned, incomplete" memorandum that "does not begin to respond to the discovery that Orr served in August of 2008." [35] Indeed, Respondent never complied with the court's order before withdrawing as Hoch's counsel of record on March 25, 2009.[36]

The People allege Respondent violated several Rules of Professional Conduct by mismanaging disclosure and discovery in Hoch's case. The People's Claim II, predi-

---

tached it to Hoch's response to Orr's motion for summary judgment, approximately one year after Respondent filed Hoch's complaint.

27. *Id.* at 4–5.

28. In a December 8, 2008, order, the court awarded $1,260.00 in fees in favor of Orr and against Respondent. Ex. 25.

29. Ex. 23 at 2.

30. Ex. 26 at 2.

31. Hoch confirmed during his testimony that he had sent the box of documents to Orr at Respondent's direction.

32. Ex. 26 at 2–3.

33. Ex. 27.

34. Ex. 28.

35. Ex. 29 at 4. This memorandum, which Hoch testified he drafted without Respondent's assistance, is attached to Orr's February 28, 2009, status report as exhibit 2 (*see* Preston000448).

36. Ex. 30. We discuss Respondent's representation of Hoch and withdrawal as counsel more fully below.

cated on Colo. RPC 1.3, alleges Respondent failed to act with reasonable diligence and promptness in his prosecution of Hoch's matter. In their Claim VI, the People urge us to find that Respondent fell afoul of Colo. RPC 3.2 by failing to expedite the litigation when he delayed the discovery process. Their Claim VII asserts Respondent knowingly disobeyed an obligation under the rules of a tribunal in contravention of Colo. RPC 3.4(c); the People argue that Respondent's refusal to comply with the court's November 12, 2008, and February 4, 2009, orders constituted a knowing defiance of those orders. Likewise, the People contend in Claim VIII that Respondent's continued rebuff of Rice's requests for disclosure and discovery—compounded by his disobedience of the court's orders—amounts to a violation of Colo. RPC 3.4(d), which compels attorneys to make reasonably diligent efforts to comply with legally proper discovery requests by opposing counsel.[37]

Respondent vehemently denies his behavior in the discovery process was unethical or unprofessional. He swears it is "standard practice" to use "shorthand" in disclosures and to wait for subsequent discovery efforts before making full disclosures, and he says attorneys commonly invite opposing counsel to inspect materials where they are stored. Respondent also portrays the discovery phase of the case as largely out of his control. He flatly disputes that Hoch ever brought him any documents, whether in binders, boxes, or files, and he labors under what appears to be the misimpression that in June 2007 Hoch gave to Orr employees a set of documents quantifying Hoch's claims. From that premise, he argues his conduct in the matter was fueled by his knowledge that Orr had in its possession the best and only evidence supporting the lien.

At the same time, Respondent also acknowledges that bookkeeping entries proving up Hoch's claims could be located in an electronic database stored on Hoch's business computer, noting that, with the database, "we could generate any information [Rice] wanted or any responses to inquiries he had." Yet while the database contained core information to recreate Hoch's work invoices, which Respondent concedes would have been relevant to the discovery Rice sought, Respondent testified there was "no way to take the raw data out of Hoch's computer and put it on a CD–ROM; it would have made no sense without Hoch's computer."[38] Accordingly, he says, he was required to lend Rice his own notes to make sense of the native format source records and thus invited Rice to view the data entries in Dolores.

Above all, Respondent lays all discovery deficiencies and delays at Rice's and Hoch's feet. Respondent is indignant about what he views as Orr's own discovery failings, and he criticizes Rice, as Orr's attorney, for failing to specifically articulate which documents he sought in discovery. As for Hoch, Respondent paints him as completely unprepared and unreachable, as though he "disappeared from the face of the earth." He says the delay in providing timely discovery responses can be attributed to what he considers to have been Hoch's uncooperative attitude during the summer of 2008, as evidenced by Hoch's alleged cancellation of several prearranged meetings in August 2008.

The Hearing Board concludes the People have shown clearly and convincingly that Respondent's conduct violated Colo. RPC 1.3, 3.2,[39] 3.4(c), and 3.4(d). In short,

---

**37.** *See Samms v. Dist. Court,* 908 P.2d 520, 525 (Colo.1995) (stating "the purpose of pretrial discovery is to eliminate surprise at trial, discover all relevant evidence, simplify the issues, and promote the expeditious settlement of cases") (citations omitted).

**38.** At the hearing, Respondent described the database as an outdated accounting program with a "totally nonsensical" electronic format lacking the capacity to communicate with other programs. Hoch testified the database was a Windows spreadsheet product for basic accounting.

**39.** The People allege, in part, that Respondent violated Colo. RPC 3.2 by unreasonably failing to schedule mediation in Hoch's case. While the mediation never occurred, there is not enough evidence before the Hearing Board to clearly and convincingly conclude Respondent bore sole or primary responsibility for the collapse of efforts to settle the case through alternative dispute resolution. Accordingly, our finding that Respondent violated Colo. RPC 3.2 rests exclusively on the People's allegation that Respondent delayed discovery production.

Respondent failed to act with diligence and promptness, waiting six months to provide rule-mandated disclosures, then only to promise but not produce a CD-ROM. For the year thereafter, Respondent withheld disclosure of basic information relating to Hoch's claims—with alternating and often-times conflicting justifications—even though Rice specifically brought the matter to Respondent's attention at least ten times.[40] In the same manner, Respondent flatly ignored Rice's repeated appeals to respond to Orr's discovery requests for seven months: by March 2009, when Respondent withdrew as Hoch's counsel, those requests were still outstanding. And most egregious, he flouted two court orders mandating he promptly provide disclosures and discovery.

Further, Respondent's decision to assert certain claims was, at best, questionable, particularly those premised on Hoch's mechanic's liens, which were ultimately adjudged "patently invalid."[41] His failure to investigate the bases for Hoch's trust fund claim, as Rice urged, ultimately resulted in the dismissal of that claim.[42] And his decision to re-plead in Hoch's amended complaint quantum meruit and mechanic's lien claims, which were identical to those that had earlier been dismissed on the merits, suggests a lack of proper inquiry into and analysis of Hoch's

matter that falls short of the diligence standards expected of Colorado lawyers.

We note we do not give Respondent's defenses any credence. Whether or not Respondent believed he was adhering to normal procedures, his conduct had the effect of "promot[ing] principles of gamesmanship" and "hid[ing] the ball," and his lack of diligence in responding to Rice's requests was tantamount to obstructing the discovery process.[43] Likewise, that discoverable information relevant to Hoch's claims was stored electronically, be it in "native format," Windows, or scanned PDF files, cannot justify departure from Respondent's obligations as an attorney; Respondent had a duty to disclose and produce "any data compilations from which information can be obtained [and] translated, if necessary, ... through detection devices into reasonably usable form...."[44]

Further, whether pre-litigation documents were exchanged or whether Rice complied with his discovery obligations is of no consequence, as the rules make no exception for lack of compliance on these scores. And finally, even if it were true that Hoch compromised Respondent's prosecution of his case by failing to communicate—a finding we do not make, since the Hearing Board adjudges Hoch a sincere witness who was very much vested in the litigation's outcome[45]—

40. As one example, on no fewer than four occasions prior to August 2008, Rice specifically requested in writing that Respondent produce the notice of intent to file Hoch's lien and the lien itself, yet Respondent waited to turn over these documents until the fall of 2008, when he attached them to Hoch's response to Orr's summary judgment motions. At the disciplinary hearing, Respondent first testified that he did not have these documents in his possession—although it is undisputable he easily could have obtained the lien at the La Plata County courthouse—but he later acknowledged that these documents were in his possession all along, having received them in September 2007 and stored them on his computer. To explain why, therefore, he did not earlier produce the notice and lien, Respondent testified he was unaware until the fall of 2008 that these documents were in his possession and then suggested, staggeringly, that "if I felt [the notice of intent to file a lien] was something Rice did not have or needed, I would have sent it to him."

41. Ex. 37 at 2.

42. The court dismissed the claim without prejudice and allowed Respondent to amend Hoch's complaint to plead under another statutory provision.

43. *See Disciplinary Counsel v. Stafford*, 128 Ohio St.3d 446, 946 N.E.2d 193, 198 (2011) (quotations and citations omitted); *see also* Colo. RPC 3.2 cmt. 1 ("Nor will a failure to expedite be reasonable if done for the purpose of frustrating an opposing party's attempt to obtain rightful redress or repose. It is not a justification that similar conduct is often tolerated by the bench and bar.").

44. C.R.C.P. 34(a).

45. On the whole, the Hearing Board deems Hoch a credible witness; his testimony was reasonable and consistent with documentary evidence and the testimony of other witnesses, and his manner and demeanor on the witness stand were believable. Moreover, Hoch's ongoing crusade to recover his file tends to corroborate his testimony that he gave Respondent his file during the rep-

Respondent would not be excused from fulfilling his duties as Hoch's legal counsel. Respondent was obligated to, but did not, pursue Hoch's matter and "take whatever lawful and ethical measures [were] required to vindicate [Hoch's] cause," even in the face of "opposition, obstruction or personal inconvenience." [46] As such, we conclude Respondent's continued inaction in complying with his disclosure and discovery obligations represents an abuse of the discovery process far more egregious than the discovery disputes typically resolved by trial courts.[47] His misconduct is an arrant dereliction of his responsibilities as a lawyer and an officer of the court.

### Respondent's Lack of Competence and Communication While Representing Hoch

As Rice pressed Respondent for discovery and disclosures, Hoch's relationship with Respondent became strained. Throughout the early part of 2008, Hoch anticipated attending mediation, which never materialized. Then, in mid-summer 2008, Respondent alerted Hoch to Rice's pending discovery requests, and the two men arranged to meet to review the box of documents Hoch had given Respondent. Hoch testified that Respondent canceled their scheduled meetings approximately five times in early August 2008, while Respondent offered contradictory testimony: at turns he claimed that Hoch canceled several times, while at other times he maintained that each person asked to reschedule the meeting between one and three times.

On August 14, 2008, Hoch's wife planned to attend a scheduled meeting with Respondent at his home office. That day, she called Respondent to notify him she was running late, but Respondent threatened to withdraw if she failed to appear promptly. Agitated, Hoch's wife called Hoch, who immediately "dropped everything [he] was doing" at a work site to salvage the situation. When Hoch arrived, he apologized for being late and begged Respondent to remain on the case. He testified, "I told [Respondent], this is all I've got. If you resign, I lose $150,000.00. I was almost on my knees.... It was a total collapse for me. My whole business was on the line." But Respondent refused to relent and told Hoch he wanted nothing more to do with the case.[48]

The same day, Respondent drafted a letter to Hoch announcing his intention to withdraw from his case and notifying Hoch of his right to object to the withdrawal.[49] In the days following, Hoch placed countless telephone calls to Respondent, who refused to return those calls, so Hoch sought Secrist's assistance in drafting a motion objecting to Respondent's withdrawal on the grounds that it would "materially adversely effect [sic] the legal interest of [Hoch] and [his] financial integrity." [50] Respondent never filed with the court a response to Hoch's objection or a motion to withdraw. Instead, he simply waited for a month or more [51] to resume contact with Hoch—a key period during which Orr's summary judgment motions were filed—until one day Hoch "got a call

---

resentation and that Respondent remains in possession of it today.

**46.** Colo. RPC 1.3 cmt. 1.

**47.** *Cf. In re Attorney C,* 47 P.3d 1167, 1174 (Colo. 2002) (noting "the possibility of a grievance proceeding [should not] permeate every discovery dispute ...").

**48.** Respondent's recollection of these events, which we do not credit, is substantially dissimilar. As noted above, Respondent claims to have threatened to end the representation when, after trying to secure Hoch's cooperation for several months, Hoch repeatedly canceled their scheduled meetings and then simply failed to appear for their August 14, 2008, appointment. Respondent also testified in the disciplinary hearing that Hoch was aggressive and intimidating, and he

was "terrified" at Hoch's displays of anger; he said he "would have called 911" but the emergency response time to his home is slow. The Hearing Board notes, however, that Respondent had somewhat modified his testimony on this point since a November 2009 hearing in which he stated, "I don't think [Hoch] had gotten to the point where I needed to call dispatch or anything, but my fiancée was very concerned, and that's just another side of the story." Ex. 36 at 55: 1–4.

**49.** Ex. 18.

**50.** *Id.*

**51.** *See* Ex. 36 at Preston001594.

from [Respondent] like nothing ever happened," telling him that they needed to get the case back on track.

When Respondent again took up Hoch's case in the fall of 2008, he turned his attention toward responding to Orr's discovery requests. To that end, he invited the Hochs back to his office, where they spent several hours going through the box of documents in Respondent's possession.[52] Hoch testified that at some point, Respondent discontinued the review and sent the Hochs home with all of the documents. Respondent had the Hochs sign a piece of paper promising to return the documents and then instructed them, according to Hoch, to go through the documents Orr had sent them, decide what was "legit" and not, make a set of copies for each named party to the litigation, and mail the copies. The Hochs later returned the documents to Respondent, as they vowed they would.[53]

Sometime thereafter, Respondent also charged Hoch with the task of replying to Orr's interrogatories. Respondent testified it was just "silly" to expect he could answer the interrogatories, since only Hoch had the requisite information to respond to them. Hoch recalled thinking, "this isn't my job; I have no idea what I'm doing," but Respondent only counseled Hoch to do the best job he could, while remaining adamant that Hoch was responsible for drafting the responses. Hoch testified Respondent never offered to review a draft, so Hoch did what he could

and sent out the result—a one-page, "to whom it may concern" memorandum.[54]

Hoch recalled next interacting meaningfully with Respondent in February 2009, when Respondent telephoned him to discuss the court's January 31, 2009, order directing Hoch to release any lis pendens relating to his mechanic's liens. Hoch remembered being "devastated" by the news and expressing his irritation with Respondent, who hung up on him. Hoch then made scores of unreturned telephone calls to Respondent. After almost a month passed with no communication, Hoch emailed Respondent, "DEAR JIM WE HAVE NOT HEARD FROM YOU FOR A WHILE. WE WOULD LIKE TO SEE IF YOU HAVE FOUND OUT ANYTHING ABOUT THE CASE. PLEASE LET ME KNOW SOMETHING."[55] Respondent responded the same day, only to say, "Please pay your bill."[56]

Hoch testified he felt "in total disarray over the whole case," so he once again sought Secrist's help to draft a March 16, 2009, motion notifying the court that Respondent had "abandoned" him, leaving him "legally helpless and exposed" and "at the mercy of his legal counsel," and asking for additional time to locate new counsel.[57] Respondent filed a motion to withdraw nine days later.[58]

■ The People's Claim I asserts that Respondent violated Colo. RPC 1.1, which mandates lawyers provide their clients competent representation, by failing to thoroughly investigate the facts of the case and conduct discovery. In addition, the People aver in

---

52. Respondent suggested these were the documents he received from Rice, whereas Hoch implied these documents represented both the set of documents he initially tendered to Respondent and the set of documents later shipped by Rice. The Hearing Board concludes Hoch's testimony is credible and therefore more accurately describes the provenance of the documents.

53. *See* Ex. 36 at Preston001561, which notes in Respondent's billing sheets, "Client return of file and discovery."

54. *See* Ex. 29 at Preston000448. Respondent maintained Hoch distributed the memorandum against his express instructions and offered a different version of events: "Plaintiffs' counsel gave [Hoch] express instructions to provide the information necessary to respond to written dis-

covery to this office for preparation ... and, [sic] other formalities necessary for compliance. This was one instruction of many given to [Hoch] over a course of months requiring him to respond to the discovery and disclosure." Ex. 30 at 2. The Hearing Board rejects Respondent's version as incredible, since we surmise that Hoch would have provided Respondent with the raw information or a draft response if he felt that option were available to him.

55. Ex. 31 (emphasis in original).

56. *Id.* Whether Hoch had, indeed, fallen behind in payments is not before the Hearing Board.

57. *Id.*

58. Ex. 30.

Claim III that Respondent violated Colo. RPC 1.4(a) and (b) by failing to communicate adequately with Hoch. Respondent challenges these charges. He contends the People have failed to acknowledge the degree of difficulty of this case resulting from the faulty liens filed by Secrist, and he insists he did everything a conscientious lawyer would do in the same situation.

The Hearing Board concludes the People have satisfied their burden of proving these two claims. Regardless of the strength of Hoch's case and the validity of the liens when Respondent accepted the case, Respondent's duty compelled him to provide Hoch competent representation. Yet Respondent entirely neglected his responsibility to respond to discovery, foisting that task entirely onto Hoch. Not only did Respondent instruct Hoch to review and select documents for production, but he demanded Hoch respond to Orr's interrogatories, despite Hoch's repeated objections that he did not understand how to do so. Both tasks required, at a minimum, the safeguard of a lawyer's review to guarantee proper objections were made and privileges protected. But Respondent failed to exercise any oversight, contrary to the "methods and procedures meeting the standards of competent practitioners" [59] and in violation of Colo. RPC 1.1.

In addition, during the course of the representation, Respondent twice dropped out of communication with Hoch for extended periods of time in violation of Colo. RPC 1.4(a) and (b). The first instance, in August 2008, left Hoch in limbo for several weeks without certainty as to whether Respondent continued to represent him. Indeed, Respondent's failure to explain to Hoch whether he would file a motion to withdraw prevented Hoch from making an informed decision concerning the representation. The second instance, in early 2009, lasted for more than a month; not only did Respondent fail to keep Hoch

reasonably informed of the status of his case during that time, but Respondent declined to respond to Hoch's requests for information until Hoch came current on his account. As such, the Hearing Board concludes Respondent violated Colo. RPC 1.1 and 1.4(a) and (b).

### Refusal to Return Hoch's File

In July 2009, Hoch informed the court he had been unable to recover his file from Respondent, and the court issued a minute order on July 20, 2009, directing Respondent to provide Hoch with his original file within fifteen days.[60] Instead, Respondent sent an August 6, 2009, letter to the court, in which he asserted a retaining lien on Hoch's file in the amount of about $28,000.00.[61] Wrote Respondent, "I am pleased to provide the file to Mr. Hoch, as he knows, if he provides some reasonable collateral for his outstanding fees." [62]

The court set the matter for a November 20, 2009, hearing, during which Respondent represented himself and Hoch appeared pro se. At the hearing, Hoch testified Respondent had "the whole box of everything," including Hoch's subcontract with Orr, invoices, records of payment, change orders, and correspondence.[63] Respondent, in turn, acknowledged that Hoch gave him a "handful of documents" at the outset of the case [64] and testified the Hochs had a "binder about an inch thick" [65] of documents they provided to him. He also conceded that in the fall of 2008 he sent a "big box" of documents home with the Hochs, but only after having them sign "a slip of paper agreeing to return them to [him] in two or three weeks." [66] And he admitted his billing records reflect that the Hochs returned these documents in early January 2009.[67]

---

59. Colo. RPC 1.1 cmt. 5.

60. Ex. 33.

61. Ex. 34.

62. *Id.*

63. Ex. 36 at 19–20.

64. *Id.* at 52: 3–8.

65. *Id.* at 53: 9–13.

66. *Id.* at 35: 19–23.

67. *Id.* at Preston001561.

Three days later, the court issued an order prohibiting Respondent from continuing to assert a retaining lien upon Hoch's file. The court observed that although Respondent "substantially litigated the case, a significant portion of the litigation that is reflected in the Court's files concern[s] disclosure disputes and discovery disputes that were easily avoidable," such that it could not find the "amount of litigation exerted to defend Mr. Hoch's liens that were patently invalid to be reasonable." [68] Accordingly, the court ordered Respondent to provide Hoch a copy of his file, including documents but excluding work product, within ten days.

Rather than comply with the order, Respondent waited twenty-eight days to send a letter to the court seeking reconsideration.[69] Two months later, Hoch wrote to the court on February 17, 2010, to report that Respondent had not complied with the court's order.[70] The court took action on March 12, 2010, in a minute order, ruling that reversal of its previous order was unwarranted and commanding Respondent to provide Hoch a copy of his file within fifteen days.[71] Respondent neither complied nor responded until April 25, 2010, when he filed an objection to the order expressing concern about the competence and the ethical conduct of the court.[72] Hoch then contacted the court clerk telephonically on June 9, 2010,[73] and filed a June 16, 2010, pro se motion to alert the court that Respondent had not yet returned his file.[74]

With no response from Respondent in the following weeks, Hoch filed a September 1, 2010, status report with the court seeking remedial and punitive sanctions for contempt of court and noting Respondent had filed a separate attorney's fee collection lawsuit in San Miguel County (the "San Miguel litigation") against him.[75] Respondent replied a week later, contradicting his earlier statements by contending that he had already "returned 'the file' to Mr. Hoch in November 2008," and that Hoch, in turn, "sent his only copy of 'the file' to defendant's counsel 'Rice.'" [76] Respondent claimed Orr therefore had two copies of the file and, astonishingly, moved the court to compel Orr to return its extra copy to Hoch.[77] Hoch objected, remarking that Respondent's statements were incompatible with his earlier averments and noting that Respondent's behavior continued to jeopardize Hoch's case.[78] Hoch formally moved for remedial contempt of court against Respondent on November 4, 2010,[79] and the matter was set for an evidentiary hearing in July 2011. At the time of the disciplinary hearing in late June 2011, Respondent had not tendered to Hoch a copy of his file.

On July 21, 2010, Respondent initiated the San Miguel litigation against Hoch to recover unpaid attorney's fees. Hoch was forced to retain new counsel, Erin Johnson ("Johnson"), to defend him in that action.[80] Johnson also agreed to represent Hoch in his remaining claims in the La Plata litigation. Respondent has recently warned Hoch and Johnson to expect to defend against another suit, this time in Montrose County, alleging abuse of service of process.

■ The People argue Respondent has violated Colo. RPC 1.16(d) by failing to return Hoch's file and Colo. RPC 3.4(c) by disobey-

68. Ex. 37 at 2.

69. Ex. 38.

70. Ex. 39.

71. Ex. 41.

72. Ex. 42. Respondent alleged in his objection that he did not receive the minute order until April 19, 2010. Respondent also advised the court he planned to send a copy of his objection to the Commission on Judicial Discipline.

73. Ex. 43.

74. Ex. 45.

75. *Id.*

76. Ex. 46.

77. *Id.*

78. Ex. 7.

79. Ex. 48.

80. At the disciplinary hearing, Respondent acknowledged that part of his motivation in choosing to file the action in San Miguel County was to avoid the La Plata County court's earlier ruling barring his recourse to a retaining lien.

ing the court's repeated directives to do so. Respondent challenges these claims, maintaining he "would do anything to comply" with court orders, but he takes antipodal positions in defending his failure to return Hoch's file. He first contends Hoch never gave him any documents at the start of the litigation, and thus he had nothing in his possession to surrender. But discordantly, he then says he was ordered only to return the *original* file, which he claims he does not have—implying he may have a *copy* of the file but was not directed to return it—saying, "If I had the original file, I would have given it to [Hoch]." Next, he insinuates his only obligation under the court's orders was to tender to Hoch a *paper* file, which he also insists he does not have: "I just don't have a paper file. I have an electronic file." And this defense shades into his last, which appears to be founded on the assumption that because he scanned documents into his electronic file, he added value to those documents, thereby transforming them into attorney work product.

Respondent's defenses hold no water. His first is nothing but chicanery: Respondent's own billing statements indicate Hoch "return[ed]" the file to him in January 2009,[81] confirming that, at least at that point, he had something tangible to surrender. Respondent's attempts to differentiate his obligation to return Hoch's original paper file from his duty to surrender an electronic copy thereof are also disingenuous. Although the court's July 20, 2009, minute order directed Respondent to return his "original file," two subsequent court orders drew no such distinction, merely ordering Respondent to provide to Hoch a "copy of his file."[82] And none of the three orders ever distinguish between hard paper copies and electronically scanned and stored copies. Similarly, the scope of Colo. RPC 1.16(d) is not delimited by the manner in which a client's papers or property are stored; regardless of the format, such mate-

rial is to be surrendered upon termination of the attorney-client relationship.

Finally, Respondent's broad-based assertion of the attorney work product privilege, in an effort to shield from surrender any document to which he "adds value," evinces an unreasonably capacious understanding of that doctrine. "Personal attorney work product," encompassing those documents a lawyer need not surrender to clients upon termination under Colo. RPC 1.16(d), extends only to "that portion of the file, such as firm administrative documents, conflicts checks, personnel assignments, and personal lawyer notes reflecting attorney impressions, that is not needed to protect the client's interests...."[83] Respondent's theory—that the mere act of selecting documents to scan draws on a "lawyer's skill and expertise" and thus creates work product out of materials otherwise needed to protect the client's interests—does not accord with the narrow definition of personal attorney work product in the context of Colo. RPC 1.16(d).[84]

The Hearing Board thus concludes Respondent violated Colo. RPC 1.16(d) and 3.4(c) by declining to surrender to Hoch his file, particularly because his refusal flew in the face of three explicit court orders directing him to do so. Respondent's prevarication while refusing to surrender these materials, perfectly illustrated by his assertion in 2009 of a retaining lien on a file he now claims he returned in 2008, is matched only by his unabashed disobedience of three court directives over the course of almost two years. His intransigence in this matter has severely prejudiced Hoch's interests and completely disregarded the La Plata County court's authority.

## IV. SANCTIONS

The American Bar Association *Standards for Imposing Lawyer Sanctions* (1991

81. *See* Ex. 36 at Preston001561, which notes in Respondent's billing sheets, "Client return of file and discovery."

82. Exs. 37 & 41.

83. Colo. Bar Ass'n Ethics Comm., Formal Op. 104 n. 6 (1999).

84. Nor does Respondent's position pay heed to the spirit of Colo. RPC 1.16(d), which would have lawyers "err on the side of production" in order to protect their clients' interests. *Id.*

& Supp. 1992) ("ABA *Standards*") and Colorado Supreme Court case law govern the selection and imposition of sanctions for lawyer misconduct. ABA *Standard* 3.0 mandates that, in selecting the appropriate sanction, the Hearing Board must consider the duty breached, Respondent's mental state, the injury or potential injury caused, and the aggravating and mitigating evidence.

## ABA *Standard* 3.0—Duty, Mental State, and Injury

*Duty:* Respondent knowingly refused to comply with several court orders in two distinct instances, failed to expedite litigation, and made virtually no effort to comply with his discovery obligations: his misconduct was inimical to his duties to the legal system to act with the honesty and integrity of an officer of the court. Respondent also violated his duties to his client, Hoch, by representing him without the requisite competence and communication expected of a licensed practitioner. In addition, by failing to return Hoch's file, Respondent violated his duty as a legal professional to protect Hoch's interests upon withdrawing as counsel.

*Mental State:* The Hearing Board has no doubt Respondent acted knowingly in flouting the court's discovery rulings and in ignoring the court's orders to return Hoch's file. We also have no trouble concluding Respondent knowingly refused to surrender Hoch's file, knowingly declined to communicate with Hoch during extended periods of his representation, knowingly chose not to comply with Rice's legally proper discovery requests, and knowingly failed to act with reasonable diligence or promptness, thereby thwarting efforts to expedite the litigation. We attribute to Respondent only negligence, however, in his failure to handle Hoch's case competently.

*Injury:* Respondent caused actual harm to the judicial system and legal profession, as his flagrant and continued disregard of the court's orders undermined the authority and "respect due to courts and judicial officers." [85] Hoch's new attorney, Johnson, testified that Respondent's behavior "makes me not want to be a lawyer," claiming that "in my entire career, both inside and outside of law, I've just never had circumstances with this poor a level of professional[ism]."

Respondent also obstructed the efficient management of Hoch's case. Respondent's refusal to hew to expected disclosure and discovery procedures subverted the search for truth effectuated by pretrial discovery and had "no substantial purpose other than delay." [86] Indeed, his failure to timely produce Hoch's notice of intent to file the lien in January 2008 prolonged litigation of certain claims by at least nine months. Johnson, Hoch's current counsel, said, "this is the craziest case I've ever seen: everything is argumentative, confusing, and [Respondent] hasn't tried to move the case along in any rational manner." Orr's attorney, Rice, echoed those sentiments, noting that at some point in the litigation he "wasn't getting any cooperation from [Respondent] . . . at all, not even to forward his own client's interests." Respondent's two-year refusal to return the file also appears to have halted the forward movement on Hoch's remaining claims, since Hoch was unable to continue meaningfully litigating his claims without his file.

Respondent's misconduct has most profoundly prejudiced Hoch. Hoch was neither competently represented nor reasonably informed of the status of his case; at times, Respondent's failure to communicate with Hoch verged on abandonment. Further, Johnson and Rice both testified that the best opportunity to collect on a mechanic's lien is when a complaint is first filed, yet Respondent dragged out the disclosure and discovery process. As a result, Hoch was billed for legal fees that the La Plata County court found "should not have been incurred," while also losing the opportunity to present his

---

85. *People v. Dalton*, 840 P.2d 351, 352 (Colo. 1992) (quoting *Losavio v. Dist. Court*, 182 Colo. 180, 185, 512 P.2d 266, 268 (1973); *see also In re Kelley*, 52 Cal.3d 487, 276 Cal.Rptr. 375, 801 P.2d 1126, 1131 (1990) ("Disobedience of a court order, whether as a legal representative or as a party, demonstrates a lapse of character and a

disrespect for the legal system that directly relate to an attorney's fitness to practice law and serve as an officer of the court.").

86. Colo. RPC 3.2 cmt. 1.

claims. Following Respondent's withdrawal, Hoch felt he was "left high and dry," since Respondent retained "everything [Hoch] needed to start the case back up." In short, Hoch said, "this just destroyed my business, my relationship with my wife, I struggled all this time, then I have to pay thousands more to defend myself [against Respondent's two lawsuits]. I don't know how much more I can go through. I'm just trying to make a living!"

### ABA *Standard* 3.0—Aggravating and Mitigating Factors

Aggravating circumstances are any factors that may justify an increase in the degree of discipline to be imposed, and mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline imposed. The Hearing Board considers evidence of the following aggravating and mitigating circumstances in determining the appropriate sanction.

*Dishonest or Selfish Motive—9.22(b):* We conclude Respondent's dealings with Hoch have been motivated primarily by his own selfish interests, rather than his client's needs, and we find this a factor in aggravation.

*Pattern of Misconduct—9.22(c):* Respondent's contumacy appears to have developed into a multi-year pattern of ignoring court mandates. Not only has he disobeyed two separate sets of court directives in this case, but he was recently publicly censured for repeatedly flouting a court's administrative order governing facsimile filings and for refusing to pay court fees associated with those filings in violation of Colo. RPC 8.4(d).[87]

*Multiple Offenses—9.22(d):* The Hearing Board finds several violations of the Colorado Rules of Professional Conduct under the rubric of three distinct sets of offenses: Respondent's mishandling of the disclosure and discovery process, his neglect and incompetent representation of Hoch, and his obdurate refusal to return Hoch's file following his withdrawal as counsel of record.

*Bad Faith Obstruction of the Disciplinary Proceeding—9.22(e):* During the pre-hearing phase of this disciplinary proceeding, the PDJ instructed Respondent to submit a final list of exhibits he intended to introduce at the hearing. Instead, Respondent filed a 123-page inventory of over 4,400 individual exhibits listed only by partial titles of each document. Many documents listed are duplicates, while others appear to be documents from a previous matter in which Respondent represented Hoch. At the hearing, Respondent sought only to introduce a handful of documents, evincing no intention of using or relying on the remainder. Respondent's decision to submit this document register as an exhibit list, followed by his refusal to remove non-relevant documents from the list when requested by the People, speaks to an intentional refusal to comply with the PDJ's orders concerning pre-hearing submissions.

*Refusal to Acknowledge Wrongful Nature of Conduct—9.22(g):* The Hearing Board considers this factor in conjunction with Respondent's request that we apply a mitigating factor of remorse (ABA Standard 9.32(*l*)). In light of Respondent's lack of credibility, we conclude his refusal to acknowledge the wrongful nature of his conduct should be accorded significant weight in aggravation, while we deem any mitigation for remorse wholly inappropriate. Respondent blames Hoch and Rice for his discovery failings, fails to take responsibility for his two periods of protracted silence while representing Hoch, and contends he complied with all court orders. Although he testified that he "deeply regrets anything [he] may have done to contribute to [Hoch's] grief in the matter" and he "wish[es] things had turned out differently," he also said, "I feel very badly but it isn't entirely my job to fix [Hoch's] life; I do only what I can." Based on our observations, we are not satisfied Respondent is remorseful; to the contrary, we are persuaded Respondent sees no error in his conduct.

---

**87.** Because the misconduct in this matter primarily occurred prior to the final decision in the earlier matter, case number 10PDJ021, we consider the previous finding of violation as a pattern of misconduct, rather than as a prior disciplinary offense. *See People v. Williams*, 845 P.2d 1150, 1153 n. 3 (Colo.1993).

*Substantial Experience in the Practice of Law—9.22(i):* Respondent was admitted to the Colorado bar in 1991. We consider in aggravation that Respondent had been licensed as an attorney in this jurisdiction for sixteen years when he first took Hoch's case. He has now been licensed as a Colorado lawyer for twenty years.

*Indifference to Making Restitution— 9.22(j):* During the disciplinary hearing, Respondent testified that he was "resolved to just drop the [San Miguel] proceeding against Hoch," volunteered to help Hoch recover against Orr in bankruptcy, and determined to dismiss the Montrose suit against Hoch without serving the complaint. But measured against his two-year stonewall in returning Hoch's file, his words ring hollow. We consider this an aggravating factor.

*Personal or Emotional Problems—9.32(c):* Respondent testified that throughout early 2009, his fiancée struggled against a terminal illness, which took an emotional toll on him. We regard this as a factor mitigating Respondent's misconduct.

*Imposition of Other Penalties or Sanctions—9.32(k):* In late 2008, Respondent was sanctioned for his failure to provide disclosures and was personally assessed $1,260.00, payable to Orr, for attorney's fees it incurred in attempting to obtain Respondent's compliance with his discovery and disclosure obligations. The ABA Standards mandate this earlier sanction be considered in mitigation.

### Sanctions Analysis Under ABA *Standards* and Case Law

ABA *Standard* 6.22 calls for suspension in cases when a lawyer knowingly violates a court order or rule, resulting in injury or potential injury to a client or a party, or interference or potential interference with a legal proceeding. ABA *Standard* 4.42 also identifies suspension as appropriate when a lawyer knows he or she is not performing the services requested by the client but does nothing to remedy the situation, or when a lawyer engages in a pattern of neglect, re-sulting in injury or potential injury to the client.

Colorado case law also provides a framework that confirms a significant period of suspension is warranted here. In general, the Colorado Supreme Court has approved lengthy suspensions for flagrant disobedience of court orders. In *In re Roose,* the Colorado Supreme Court suspended an attorney for one year and one day for failing to comply with a judge's command.[88] There, Roose walked out of court in defiance of a judge's direct order that she remain and continue representing her client in a scheduled hearing. She was found to have knowingly disobeyed the court's order, made false statements to an appellate tribunal, failed to provide competent representation, and engaged in conduct prejudicial to the administration of justice. Likewise, in *People v. Hanks,* the Colorado Supreme Court ruled that an attorney's failure to comply with a child support order for over four years, leading to a $55,282.62 arrearage and issuance of a contempt citation, justified suspension for one year and one day.[89] The Colorado Supreme Court has also imposed suspension for one year and one day when an attorney neglected to respond to discovery requests for almost a year, incompetently represented his client, failed to communicate with his client about the case's dismissal, and declined to return his client's file after the attorney-client relationship terminated.[90]

The ABA *Standards* and the applicable case law indicate the presumed sanction in this case is a lengthy suspension, and the Hearing Board determines there is little cause to diverge from this presumed sanction in light of the surfeit of aggravating factors and the relative dearth of mitigating circumstances. Respondent's failure to honor the La Plata County court's orders was not an isolated instance of insubordination; rather, his behavior points to the development over several years of a pernicious pattern of disregarding court rulings. That, coupled with his mishandling of Hoch's case, his extended gaps in communicating with Hoch, and his

---

**88.** 69 P.3d 43, 49 (Colo.2003).

**89.** 967 P.2d 144, 145–46 (Colo.1998).

**90.** *People v. Swan,* 893 P.2d 769, 769–70 (Colo. 1995).

refusal to surrender Hoch's file, all guide us toward a suspension for one year and one day.

## V.  CONCLUSION

Attorneys, as officers of the court, are bound by a duty to uphold the legal process. When they disregard court orders, they demonstrate an ongoing disrespect for that process and subvert the authority of judicial system.  In this case, Respondent defied two sets of valid court orders, causing his client significant harm in the process.  Accordingly, the Hearing Board concludes suspension of one year and one day is necessary.

## VI.  ORDER

The Hearing Board therefore **ORDERS:**

1.  **JAMES E. PRESTON,** Attorney Registration No. 20578, is **SUSPENDED FOR ONE YEAR AND ONE DAY.** The suspension **SHALL** take effect only upon issuance of an "Order and Notice of Suspension."[91]

2.  The People's Claim IV is **DISMISSED** without prejudice.

3.  Respondent **SHALL** file any post-hearing motion or application for stay pending appeal with the PDJ **on or before Wednesday, September 21, 2011.**  No extensions of time will be granted.  If Respondent files a post-hearing motion or an application for stay pending appeal, the People **SHALL** file any response thereto within five days, unless otherwise ordered by the PDJ.

4.  Respondent **SHALL** pay the costs of these proceedings.  The People **SHALL** submit a "Statement of Costs" within fifteen days from the date of this order.  Respondent's response to the People's statement, if any, must be filed no later than ten days thereafter.

---

91.  In general, an order and notice of sanction will issue thirty-one days after a decision is entered pursuant to C.R.C.P. 251.19(b) or (c).  In some instances, however, the order and notice may issue later than thirty-one days by operation of C.R.C.P. 251.27(h), C.R.C.P. 59, or other applicable rules.